Davis *vs.* The State of Georgia.

---

No. 13.—THOMAS DAVIS, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

[1.] In the trial of a defendant, indicted for murder, when the defendant admitted the homicide, but rested his defence on the ground, that it was justifiable homicide: *Held,* to be error in the Court to charge the Jury, that defendant's evidence of good character as a peacable man, applied only to cases where it was a question whether the *homicide* had been committed by the accused.

[2.] When, on the trial of a defendant for murder, the homicide is admitted, and the question is, as to what grade of the offence the defendant is guilty, or whether it is justifiable homicide: *Held,* to be error in the Court to charge the Jury, "that a reasonable doubt was, when it was doubtful whether a *homicide* had been committed, and if committed, whether the accused was *the slayer.*"

[3.] When a legal and proper request is made on the Court to charge the Jury, the party making such request is entitled to have the instructions prayed for, given to the Jury, as requested; and it is error for the Court to say to the Jury, " such is the law," in responding to such request.

[4.] On the trial of a defendant for murder, when the defence is justifiable homicide, or when the defence insists on any inferior grade of homicide to that of murder, it is the duty of the Court to give to the Jury the definition of each grade of homicide, as regulated by the Penal Code, and then, to leave the Jury to find the defendant guilty of such grade of the offence, as the evidence will authorize, or to find him not guilty : *Held,* to be error for the Court to charge the Jury, that they must find the defendant guilty of murder, voluntary manslaughter, or not guilty ; thereby excluding from their consideration, involuntary manslaughter.

Indictment for murder, in Marion Superior Court.   Tried before Judge Iverson, March Term, 1851.

On the trial of Thomas Davis, for the alleged murder of Eli Larkin, the record discloses a voluminous brief of evidence submitted.   The substance of it is as follows : That on the day the homicide was committed, Davis, the prisoner, came along a path some 40 or 50 yards from Larkin's (the deceased) house, on his way from a mill, with a bag on his back.   Prisoner was cursing Larkin ; accusing him of stealing a hog and a cow. Prisoner had a knife in his hand, which he had taken out to cut a switch, waving it about, and told Larkin to help himself.   Larkin came out from his house, and told prisoner to take a fool's advice, and a friend's too, and go on home.   Prisoner dared Larkin out, making threats ; Larkin said he would stand his abuse no longer, as he had been abusing him all the year.   Larkin then got over the fence and picked up a piece of wagon rail and started towards prisoner, who shut up his knife and tried to put it in his pocket.   Larkin dropped the rail and took up a weeding-hoe—prisoner tried to pick up a piece of rail, but Larkin " pinned him so closely," that he could not.   He then opened his knife again ; prisoner was then walking off from Larkin, " sideways."   Larkin struck prisoner on the left arm, and knocked the knife out of his hand—prisoner stooped down to pick up the knife, and before he was entirely " straightened up " again, Larkin struck him again on the head with the hoe, giving him a severe lick.   One of the witnesses thought that Larkin struck at the knife the second time.   Prisoner then made towards Larkin, who pushed or held him off with the hoe, both of them trying to

use the hoe. In the scuffle, both fell, Larkin being on top ; with his left hand he held the right hand of prisoner, in which he held the knife, and his right hand, Larkin had on prisoner's face. About this time, a negro man, Loyd, belonging to Larkin, came up and stooped down to take the knife away from prisoner. Larkin ordered him off; prisoner at this time, changed his knife to his left hand, and making a lick at Larkin, struck him in the throat and cut him severely, from which wound he died in about half an hour. There was some evidence of threats made by both parties.

The prisoner gave in evidence, his previous character as a peaceable man.

The Court charged the Jury, among other things, that if they believed from the evidence, that the accused, with malice, and a deliberately formed design to take the life of the deceased, went out of his way to the house of deceased, or otherwise met him, and by abusive words, or otherwise provoked an attack from deceased, for the purpose of taking his life, and a fight ensued, in which the accused killed the deceased, it was murder ; no matter how violent might have been the assault of the deceased, or with what weapons made, and no matter that it may have been necessary in the progress of the fight, in order to save his own life, to take that of deceased. To this charge exceptions were filed.

The Solicitor General, in his argument to the Jury, insisted that evidence of previous good character, applied only to cases where it was a question whether the homicide was committed by the accused. The Court charged, that the Solicitor General had stated the law correctly ; that previous good character was slight evidence at best, and only presumptive, and might be rebutted by other proof that the accused was the person committing the homicide, and referred to the case of Webster and Parkman, as an illustration of the principle. To this charge exceptions were filed.

The Court further charged, that the accused was entitled to the benefit of all reasonable doubts, as to his guilt ; that a reasonable doubt was, when from the conflicting nature of the evi-

dence, the Jury could not form an opinion either way, as where it was doubtful whether a homicide had been committed, and if committed, whether the accused was the slayer; and instanced the case of Webster, as the proper illustration of the principle —detailing at some length the facts of that case; and concluded by charging, that if the Jury had any reasonable doubt as to any of the facts, the existence of which was necessary to constitute the killing murder or manslaughter, then they should give the accused the benefit of the doubt, and acquit him. To this charge exceptions were filed.

Prisoner's counsel requested the Court to charge the Jury, that "if they believed from the evidence, that the accused being assaulted by the deceased, declined in good faith before the mortal blow was given, and in consequence killed deceased, that the prisoner was not guilty of murder." The Court charged, that "such was the law," " but that it must appear that the accused declined the contest, *bona fide*, and retreated as far as was consistent with his own safety—unless the Jury should farther believe that the accused provoked the assault for the purpose of making it a pretext, then it would be murder, and furthermore, that if the deceased declined the contest and retreated not in good faith, but with the view of availing himself of it as an excuse to take the life of deceased, he did kill the deceased, he was guilty of murder, although it might have been necessary, from the nature of the assault, to kill deceased, in order to save his own life." Prisoner's counsel excepted to the manner in which the Court charged the point requested, and also the qualifications made.

The Court also stated, that it was unnecessary for the Court to charge as to involuntary manslaughter; as from the evidence, it was either murder, voluntary manslaughter or justifiable homicide. To this charge exceptions were filed.

On these several exceptions error was assigned.

B. Hill and McDougald, for plaintiff in error.

S. C. Elam and Sol. Gen. Williams, for defendant.

*By the Court.*—WARNER, J. delivering the opinion.

The defendant was indicted for the murder of Eli Larkin, and on the trial, various exceptions were taken to the charge of the Court to the Jury. To the first portion of the charge, as contained in the record, to which exceptions were taken, we find no error.

[1.] The second portion of the charge of the Court, to which error is assigned is, that the Solicitor General in his argument to the Jury, insisted that the evidence of previous good character as a peaceable man, applied only to cases where it was a question, whether the *homicide* had been committed by the accused.

The Court charged the Jury, " that the Solicitor General had stated the law correctly ; that previous good character was slight evidence at best, and only presumptive, and might be rebutted by other proof, that the accused was the person committing the *homicide*, and referred to the case of Webster and Parkman, as an illustration of the principle."

In this case, there was no doubt whatever, that Davis committed the homicide ; that was a conceded fact; but whether it was murder, manslaughter, or justifiable homicide, was *the question* to be tried. In Webster's case, the question was, whether there had been *any homicide* committed, and if so, was the defendant *the person* who committed it ? Whenever these two facts were established in Webster's case, the guilt of the defendant was made out, for the reason, there was no evidence on the part of the prosecution, nor on the part of the defendant, from which the Jury could draw any other conclusion, than that the defendant was guilty of the highest grade of homicide.

The guilt of the defendant here, depends mainly, as to what was his *intention* in going by the house of the deceased, which must be gathered from all the facts proved on the trial. The defendant's general character as a *peaceable man*, was admissible in evidence, for the consideration of the Jury. *Roscoe's Crim. Ev.* 72, '3. 1 *Chitty's Criminal Law*, 468, *top page.* Did the defendant go by the house of deceased, for the purpose of provoking a fight, that he might take his life ? If he did, then

he is guilty of murder. If he did not go by the house of deceased with any such intention, or if he did, and had abandoned such intention before the difficulty ensued, then the Jury might find the homicide to be manslaughter only, or justifiable homicide; and in our judgment, it was competent for the Jury to take into consideration, the previous good character of the defendant as a peaceable man, in determining either of those questions, and ought not to have been restricted to the fact, as to whether the *homicide* had been committed by the defendant. A citizen of irreproachable character is found on a public highway, standing over the body of a dead man, with a bloody weapon in his hand, and declares that the deceased attempted to rob him, and he took his life. In such a case, there could be no doubt as to the fact, that the *homicide* was committed by the defendant, and yet, his general good character as a *peaceable man*, would be very important on his trial, in order to show the grade of homicide, when charged with the offence of murder.

We are therefore of the opinion, there was error in the charge of the Court to the Jury, in restricting the evidence of good character to the fact, as to whether the *homicide* had beed committed by the defendant.

[2.] The third portion of the charge of the Court, to which exceptions were taken, is in relation to the reasonable doubt of the Jury as to the guilt of the defendant.

The Court charged the Jury, "that the defendant was entitled to the benefit of all reasonable doubts as to his guilt; that a reasonable doubt was, when from the conflicting nature of the evidence, the Jury could not form an opinion either way, as where it was doubtful whether a *homicide* had been committed, and if committed, whether the accused was *the slayer*, and instanced the case of Webster, as a proper illustration of the principle, detailing at some length, the facts of that case." It is to this part of the charge that error is assigned. In the remainder of the charge of the Court to the Jury, the law, in our judgment, is correctly stated; and could we be satisfied that the first part of the charge of the Court did not prejudice the defendant by restricting the Jury to the consideration of a reasonable doubt, as to whether a

*homicide* had been committed, and whether the defendant was *the slayer,* we should not sustain this ground of error; but we are not satisfied on this point, and therefore, hold it to be erroneous. As before remarked, there was *no doubt* in this case, as to the fact that a *homicide* had been committed, and that the *defendant was the slayer.* The only *doubtful* questions to be tried were as to the grade of the homicide. Was he guilty of murder, manslaughter, or justifiable homicide?

The defendant here, did not place his defence upon the ground that *no homicide* had been committed, or that he was *not the person* who committed it, as in Webster's case—but admitting the homicide, and that he was the person who committed it, he insists, that from all the facts disclosed on the part of the prosecution, it was justifiable homicide, hence the rule stated by the Court on the trial of Webster, as applicable to the facts of that case, is not applicable to the facts of this case, inasmuch as the reasonable doubt in Webster's case was as to the fact, whether a *homicide* had been committed *by him,* and not whether such homicide was murder, manslaughter, or justifiable homicide. It is true, that the Court in the latter part of its charge on this branch of the case, did charge the Jury, "that if they had a reasonable doubt as to any of the facts, the existence of which was necessary to constitute the killing murder, or manslaughter, then, they should give the accused the benefit of the doubt, and acquit him."

But we cannot say that the Jury were not misled by the definition which the Court had previously given of a reasonable doubt, as applicable to the state of facts then before them, when the Court instructed them, " that a reasonable doubt was, when from the conflicting nature of the evidence, the Jury could not form an opinion either way as, where it was doubtful whether a *homicide* had been committed, and if committed, whether the accused was *the slayer,* and instanced the case of Webster, as a proper illustration of the principle, detailing at some length, the facts of that case." Now the reasonable doubt, as we have shown in the case of Webster, was alone applicable to the question whether a *homicide* had been committed, and whether he

was *the slayer.* The illustration given by the Court, was a prominent feature in the case, for the consideration of the Jury, one calculated to have made a deep impression on their minds, and it is impossible for us to say, that the Jury did not confine their reasonable doubt to the question, whether a *homicide* had been committed, and whether the defendant was *the slayer.* Upon a question of life or death, when there is any reasonable doubt in regard to the matter, the humane principle of the law is, that the defendant is entitled to the benefit of that doubt, and therefore, we sustain this ground of error taken in the record.

[3.] Prisoner's counsel then requested the Court to charge the Jury, " that if they believed from the evidence, that the accused being assaulted by the deceased, declined in good faith, before the mortal blow was given, and in consequence, killed the deceased, that the prisoner was not guilty of murder."

The Court charged, that " such was the law," and further instructed the Jury, as stated in the record. Exceptions were taken as to the *manner* in which the Court charged the point requested; and also, as to the further instructions given by the Court to the Jury, in relation to that point. According to the ruling of this Court, in *Colquitt vs. Thomas,* (8 *Geo. R.* 258,) the *manner* in which the charge requested on the part of the defendant, was given to the Jury by the Court, was error, for the reason stated in that case, and the authorities there cited. In regard to the further instructions of the Court to the Jury on this branch of the case, as stated in the record before us, we find no error.

[4.] The Court also stated in its charge to the Jury, that it " was unnecessary for the Court to charge as to involuntary manslaughter, as from the evidence, it was either murder, voluntary manslaughter, or justifiable homicide." To this charge of the Court to the Jury, error is assigned. By the Penal Code, there are three kinds or grades of homicide—murder, manslaughter, and justifiable homicide. *Prince,* 622. Manslaughter, by our Code, is also divided into voluntary manslaughter, upon a sudden heat of passion ; involuntary manslaughter, in the commission of an unlawful act, and involuntary manslaughter in the commission of a lawful act

without due caution and circumspection.  *Ibid.*  In *Holden vs. The State,* (5 *Geo. R.* 441,) this Court held, that it was error in the Court below, on the trial of a defendant indicted for murder, to instruct the Jury that they must find him guilty of murder, of voluntary manslaughter, or not guilty.  The charge of the Court in this case, comes fully within the principle of the decision in that case.

The Court below ought, in our judgment, in view of the facts disclosed by this record, to have given to the Jury the definition of murder, of voluntary manslaughter, of involuntary manslaughter in the commission of an unlawful act, of involuntary manslaughter in the commission of a lawful act, without due caution and circumspection, and also the definition of justifiable homicide, and then, to have left the Jury to determine under which grade or definition, the evidence showed the defendant to be guilty; or whether the evidence made out a case of justifiable homicide.  We therefore, sustain this last ground of error taken to the ruling of the Court below, on this branch of the case.  Let the judgment of the Court below be reversed, and a new trial granted.