## JORDAN *v.* THE STATE.

1. Where a witness for the State swore on the trial that he was present and saw the homicide committed, and a witness for the defendant subsequently testified that such witness for the State, immediately after the homicide, made to the latter a statement that he (the State's witness) was not present, and did not see the homicide, it was competent for the State to prove by another witness that the last-named witness was present and heard the conversation testified about, and that the first State's witness did not say that he was not present and did not see the shooting. Such evidence of the State's second witness was in effect a contradiction of defendant's witness, and was not objectionable on the ground that it was hearsay.

2. On the trial of the defendant for murder, the evidence was such as to require the judge to charge the law relating to misfortune or accident as a defense.

No. 3121. OCTOBER 10, 1922.

Indictment for murder. Before Judge Gower. Dooly superior court. February 1, 1922.

*Watts Powell,* for plaintiff in error.

*George M. Napier, attorney-general, J. B. Wall, solicitor-general, Seward M. Smith, assistant attorney-general,* and *Jesse Grantham,* contra.

ATKINSON, J. Robert Lee Jordan was convicted of the murder of Elmore Whitsett by shooting with a pistol, and, on recommendation of the jury finding him guilty, was sentenced to life imprisonment in the penitentiary. The exception is to a judgment refusing the defendant a new trial. The only special grounds of the motion for new trial complained, first, of the admission of certain evidence; and second, of the failure to charge Penal Code section 40, relating to "misfortune or accident" as a defense to a charge of murder. Other facts will sufficiently appear in this opinion.

1. One question was whether the deceased, Elmore Whitsett, or the defendant, Robert Lee Jordan, discharged the pistol that inflicted the mortal wound; there being evidence that at the time of the discharge of the pistol the persons named were in an altercation and struggling over the possession of the pistol. Mike Cobb, a witness for the State, testified that he was an eye-witness to the tragedy, and that the defendant killed the deceased by shooting him with a pistol. For the purpose of contradicting Mike Cobb the defendant introduced Ben McCoy, who testified that during the same night and after the tragedy Mike Cobb came to witness's house about 300 yards from the scene of the homicide, and was asked by witness who shot the deceased, and Mike Cobb replied, " They tell me that Robert Lee shot him, that he [Mike Cobb] wasn't there. . . When he said that, Sam Wilson, Counter Jordan, and Henry Cobb were there with me." To rebut the evidence of Ben McCoy the State introduced Henry Cobb, who testified that he was with Ben McCoy at the latter's residence at the time stated, and, referring to the statement by Mike Cobb to Ben McCoy after the shooting, the witness testified further that " Mike just come up there and said that Robert Lee had shot Elmore; he didn't say anything at all about not having seen the shooting; he said that he come from there." This testimony of Henry Cobb forms the basis of the only exception to the ruling of the court on the admissibility of the evidence. The testimony of Henry Cobb, quoted above, was admitted over the objection that it was hearsay; and a ground of the motion for new trial complains of that ruling. From the foregoing statement it is manifest that this testimony of Henry Cobb was admissible for the purpose of contradicting Ben McCoy, and was not hearsay.

2. It appears from the evidence that the homicide occurred late in the afternoon at a picnic held at a schoolhouse. The defendant and the deceased were boys about 17 years of age. Mike Cobb, a witness for the State, testified that they became involved in a fight over a dispute as to which one of them should go home with a woman; that the defendant hit the deceased with his fist, and the latter returned the blow; after they had been figthing with their fists about five minutes the defendant pulled his pistol out of his pocket with his right hand; the deceased grabbed the pistol and pushed it off from him, and " after they knocked about five

minutes " another person knocked the deceased's hand off of the defendant's right hand which held the pistol, and then the defendant changed the pistol to his left hand and put it up close to the deceased's stomach and fired, at which time deceased grabbed the pistol with his right hand and " went down to his knees," and the defendant ran.  Frank Davis, a witness for the defendant, testified:  " When I walked out there and stopped I saw these two boys tusseling, and I thought that they were playing, they were wringing their hands something that way; and after while the pistol fired, and then I walked on off; both of them had hold of it tusseling over it when the gun went off; they were wringing over it, had their hands up that way [indicating] twisting over it, going up and down in that shape.  James Carter, a witness for the defendant, testified:  " I didn't see what was going on until Calvin mentioned to me, asked me wasn't them boys fighting, and I told him no, I didn't reckon they were, that they were playing like boys generally do; they were bringing up both hands like two boys trying to take something away from each other, Robert Lee's back was to the west, and Elmore's back was to us, and I couldn't see what was between them; but they went up like that about the second time, both of their hands going up and down, but what was in their hands I didn't know."  Calvin Baskins, a witness for the defendant, testified:  " When I first saw them I spoke to another fellow and asked him wasn't them boys fighting, and he said no, he didn't think they were.  James Carter said that, and I told James I thought they were fighting, and James asked me what boys, and I told him Robert Lee and Elmore Whitsett, and I said ' Yes, they are sure fighting,' and whilst me and him were speaking them words they were tied up.  At that time they had their arms and their hands ahold of one another's shoulders in this way, had their hands up around one another in this direction, and right after that Robert Lee he snatched up this hand some way or another, and then run the hand down that way, and he snatched his hand back up and fastened Elmore's hand; they were fighting and tusseling with a pistol or something, they both had hold of it, whatever it was; and they got it up and down that way twice, like they were trying to take something away from one another; and the second time they came down the pistol shot."

This much of the evidence is stated as material to be considered in connection with the second special ground of the motion for new trial. In that ground complaint is made because the judge failed to charge the jury Penal Code section 40, which declares: " A person shall not be found guilty of any crime or misdemeanor committed by misfortune or accident, and where it satisfactorily appears there was no evil design, or intention, or culpable neglect." The assignment of error is that under the evidence the law as embodied in that section was applicable, and it was the duty of the court to give it in charge to the jury. This was an appropriate case for giving that provision of the law in charge to the jury, and it was error to fail to do so. *Smith* v. *State,* 109 *Ga.* 479 (35 S. E. 59). · In the general charge the court instructed the jury: " Now, among other things, the defendant contends that the deceased drew from his pocket a pistol, and that he grappled it, or fastened it with his hand, and that during the altercation the pistol was fired by the deceased, thereby killing him. This he contends along with his plea of general issue, general denial; among other things he contends that the killing occurred in that way. Now, if you accept and embrace his theory and contention of the killing, that it occurred in that way, that the deceased drew a pistol, or a weapon that was likely to · produce death, and was about to make a felonious assault upon the defendant, or if you believe that the circumstances were sufficient to excite the fears of a reasonable man that such would take place, as I have just charged you in other words, you would give him the benefit of the doubt; and if you entertain a reasonable doubt that such was the case, acquit him." But this is not a substantial statement of the above-quoted provision of the law to which the defendant was entitled, and will not cure the error in failing to charge as indicated above.

As the judgment refusing a new trial will be reversed on account of the error above pointed out, it is unnecessary to deal with the question of the sufficiency of the evidence to support the verdict.

*Judgment reversed. All the Justices concur, except Beck, P. J., and Hill, J., dissenting.*