## 28643. WILLIAMS v. THE STATE.

INGRAM, Justice.

The conviction for murder, and sentence to life imprisonment, of appellant in Muscogee Superior Court are here for review on several enumerated errors which appellant contends require a new trial. These alleged errors are: (1) the trial court should have charged the jury without a request on voluntary manslaughter; (2) the law of accident and involuntary manslaughter should also have been charged even though not requested; (3) the jury was allowed to make telephone calls during the time of deliberation on the case; and, (4) members of the appellant's race were systematically and improperly excluded from service on the grand jury and petit jury.

Turning first to the failure of the trial court to charge the law of voluntary manslaughter, we note it is well established in criminal homicide cases that, when the defense of justifiable homicide or a grade of homicide less than murder is advanced by the defendant, the trial judge should define for the jury every grade of homicide in issue in the case. *Davis v. State,* 10 Ga. 101 (1851). If there is any evidence of voluntary manslaughter it should be given in charge even without a request. *Banks v. State,* 227 Ga. 578 (182 SE2d 106) (1971).

"A person commits voluntary manslaughter when he causes the death of another human being, under circumstances which would otherwise be murder, if he acts solely as the result of a sudden, violent and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person . . ." Code Ann. § 26-1102. The "sudden, violent and irresistible passion" referred to in the statute is often discussed as a theory of mutual combat in situations

involving physical confrontations between the defendant and the deceased. For example, in *Joyner v. State,* 208 Ga. 435 (4) (67 SE2d 221) (1951), the defendant entered a store following an altercation with the deceased and stated the deceased came at him with a chair and that he shot the deceased in self defense. The defendant was convicted of murder and assigned error on the trial court's failure to charge on voluntary manslaughter. This court noted in its opinion in the case that mutual combat exists where there is a fight with dangerous or deadly weapons and when both parties are at fault and are mutually willing to fight because of a sudden quarrel. The essential ingredient, mutual intent, in order to constitute mutual combat, must be a willingness, a readiness and an intention by both parties to fight. This is different from the situation where reluctance, or fighting to repel an unprovoked attack, is involved as that demonstrates self defense justifying the homicide. See *Mathis v. State,* 196 Ga. 288, 291 (26 SE2d 606) (1943); and *McDaniel v. State,* 197 Ga. 757 (30 SE2d 612) (1943). The evidentiary circumstances necessary to show voluntary manslaughter, as opposed to circumstances showing the homicide was justified, relate to a situation which arouses sudden passion in the person killing so that, rather than defending himself, he wilfully kills the attacker, albeit without malice aforethought, when it was not necessary for him to do so in order to protect himself. The distinguishing characteristic between voluntary manslaughter and justifiable homicide in such cases is whether the accused was so influenced and excited that he reacted passionately or whether the defendant acted simply to defend himself.

In the present case, the defendant had engaged in an argument with the deceased over whether appellant had tried to take something out of the deceased's stepdaughter's pocketbook. The two of them finally separated, shook hands and appellant left the premises of the bar where the argument had occurred. Approximately 15 to 25 minutes later, appellant returned to the bar-cafe and had a gun in his possession. (Appellant claimed he had the gun when he was in the cafe earlier, so did not leave to get it). As appellant

entered the bar-cafe, the bartender, who was the stepson of the deceased, approached appellant and tried to talk to him. Appellant then backed out of the door and as he did the deceased came up from behind his stepson, the bartender, and was standing in the doorway when appellant shot him from about six feet away, outside the door. A witness for appellant testified the deceased had a beer bottle in one hand and knife in the other hand, and swung the bottle at appellant. A second witness for appellant testified the deceased was cutting at appellant with the knife when appellant fired his gun and shot the deceased. In an unsworn statement appellant stated that as he entered the bar on the second occasion the deceased "jumped up and started the same issue toward me again." That "the next thing I (knew), he had reached for a beer bottle over in the trash can . . . he was angry mad . . . I started moving out the door, and as I was going outside and he was approaching me, he started swinging with the beer bottle and that's about all what happened until I shot him . . ." Witnesses for the state testified the deceased had no knife or beer bottle in his possession and there were no licks or blows passed between the deceased and appellant. The appellant also stated in his unsworn statement: "I will admit to one thing, of shooting a man on the ground of defending myself . . . I was only defending myself."

We believe the evidence falls short of showing "sudden, violent and irresistible passion resulting from serious provocation" and fails to show a mutual intention to fight. The case of *Banks v. State,* supra, relied on by appellant, as requiring a charge on voluntary manslaughter, is distinguishable on its facts from the present case. In *Banks* the deceased was about to cut the defendant's brother and the defendant intervened. In this case, appellant contended the deceased attacked him and that he fired his gun in self defense, whereas the state's evidence showed the deceased had no weapon and that appellant shot the deceased in cold blood. Therefore, voluntary manslaughter was not in issue here. The evidence presented only two theories, one of murder and the other of justifiable homicide. We find no error in the trial court's failure to charge on voluntary manslaughter.

See *Dotson v. State,* 129 Ga. 727 (59 SE 774) (1907); *Irwin v. State,* 194 Ga. 690 (4) (22 SE2d 499) (1942). Cf. *Gresham v. State,* 216 Ga. 106 (115 SE2d 191) (1960).

The appellant argues that under the holding of this court in *Teasley v. State,* 228 Ga. 107 (184 SE2d 179) (1971), the trial court should have charged the law of accident and involuntary manslaughter in this case. *Teasley* involved a defendant who was intentionally firing shots at a lock on a metal box and there was evidence the deceased was a bystander who may have been struck by a ricocheting bullet. The evidence in the present case shows the appellant pointed his gun at the deceased and intended to shoot him. The evidence does not show accident or misfortune and it was not error to fail to charge these principles of law to the jury in this case. See Code Ann. § 26-602. The same conclusion is required with respect to the law of involuntary manslaughter. The evidence shows appellant intended to shoot the deceased. It was either an act of murder or justifiable homicide and the trial court did not err in failing to charge on involuntary manslaughter. See *Richardson v. State,* 97 Ga. App. 195, 198 (102 SE2d 620) (1958).

Appellant also contends that it was error for the trial court to permit the jurors to make telephone calls home prior to the supper recess and in informing one juror that he had an emergency at home. The record reveals that the trial court instructed the jury not to use the telephone calls to discuss the case and no harmful irregularity resulted from this occurrence. In addition, it clearly appears that all these instructions to the jury were given in open court by the trial judge in the presence of appellant and his counsel who offered no objection to them prior to this appeal. Thus, appellant will not now be heard to complain about them. See *Josey v. State,* 148 Ga. 468 (1) (96 SE 1041) (1918).

Finally, appellant contends that, at the time of his trial, members of his race were systematically and improperly excluded from the grand and petit juries of Muscogee County where he was indicted, tried and convicted for murder. This alleged error also comes too late for meaningful review because it is raised for the first

time on appeal. Since this issue was not urged in the trial court (see Code § 59-803 for the proper procedure), we cannot determine on appeal whether it has any merit. See *Willis v. Smith*, 227 Ga. 589, 590 (182 SE2d 94).

Having found no merit in the enumerations of error asserted in this appeal, we must affirm the conviction and sentence of appellant in the trial court.

*Judgment affirmed. All the Justices concur.*

SUBMITTED FEBRUARY 1, 1974 — DECIDED APRIL 23, 1974 — REHEARING DENIED MAY 7, 1974.

*Martin, Kilpatrick & Davidson, Paul Kilpatrick, Jr.,* for appellant.

*E. Mullins Whisnant, District Attorney, Arthur K. Bolton, Attorney General, Robert S. Stubbs, II, Executive Assistant Attorney General, Richard L. Chambers, William F. Bartee, Jr., Assistant Attorneys General, John B. Ballard, Jr., Deputy Assistant Attorney General,* for appellee.