## 52504. SANDERS v. THE STATE.

STOLZ, Judge.

The defendant appeals from his conviction of voluntary manslaughter.

On the night in question, the defendant arrived at his apartment house. After receiving no response to his knocking on the door, he entered the apartment through a window and found his wife in bed with another man, whom the defendant shot and killed with a pistol.

The defendant told Detective Sergeant Barry Carroll that when he got into the apartment he had a gun in his hand, but he did not remember taking the gun, which he used in his work, out of his pocket. Sergeant Carroll further testified that not only did the defendant not remember taking the gun from his pocket, but also that there were other things he did not remember at all and that the defendant had substantial gaps in his memory pertaining to the shooting.

On direct examination, the defendant's wife testified, "My husband opened the bedroom door, when he opened the door the light came across the bed, and I tried to reach him but I couldn't, he looked like he had been hypnotized, he was in a shock, I couldn't get to him, and he just — I don't really know, he was just in a shock."

On cross examination, the defendant's wife further testified: "(Q) Your husband just got mad and killed this man, didn't he? (A) I wouldn't say he got mad and killed him. (Q) You couldn't say he got mad and killed him? (A) No. (Q) He just killed him? (A) He was in a state of shock where he didn't know what he was doing. (Q) Oh, are you a psychiatrist? (A) No, I know my husband. (Q) Have you ever taken any courses in human behavior or psychology or psychiatry or anything like that? (A) No, I haven't. (Q) When you say a state of shock, describe what you mean by a state of shock. Was he foaming at the mouth? (A) No, he wasn't; he was there and he didn't really know where he was at the time or what he was doing. (Q) Ma'am, you don't know? (A) He opened the door and looked at me laying [sic] in the bed with another man, he didn't know what he was doing. (Q) That's what you say, that's just your conclusion, ma'am; my question to you is what did he look like, what about his appearance made you think he wasn't knowing what he was doing? Was his mouth foaming? (A) No. (Q) What about his appearance that made you think he didn't know where he was? (A) The way he was acting. (Q) By shooting? (A) No. (Q) What else? (A) Standing staring. (Q) You mean when a person stands and stares real hard he doesn't know what he's doing? (A) He didn't."

The defendant testified that after he entered the apartment, "I just went to the bedroom where we slept at

and there her and this man lay in bed and I just went out of my mind. I just — I just ain't never saw nothing like that before, I just didn't believe she would do it."

The defendant testified on cross examination that when the deceased tried to say something he just went blank.

The defendant requested the trial court to charge the jury on insanity as a defense, and the trial court declined to give the requested charges. The jury found the defendant guilty, and the trial court sentenced him to four years imprisonment. This appeal followed.

1. In *Jarrard v. State,* 206 Ga. 112 (55 SE2d 706), the Supreme Court held, "Sanity or insanity is a proper subject for opinion evidence, and where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor." In *Strickland v. State,* 137 Ga. 115 (72 SE 922), the court went so far as to allow the sheriff to testify as to the defendant's mental condition after having viewed the defendant in the cloister of the common jail for a period of two or three months.

2. In the instant case, the defendant, his wife, and Sergeant Carroll testified as to the defendant's mental condition at the time of the shooting and immediately thereafter. Based on that testimony, the defendant requested a jury charge on the issue of insanity. When there has been any evidence of insanity presented before the jury, the proper insanity charge must be given if requested. *Brown v. State,* 228 Ga. 215 (184 SE2d 655); *Teasley v. State,* 228 Ga. 107 (184 SE2d 179); *Flanagan v. State,* 103 Ga. 619 (30 SE 550).

The state cited numerous cases in support of affirmance. However, all of those cases are clearly distinguishable from the instant situation in one or more particulars. In both *Adams v. State,* 236 Ga. 468 (224 SE2d 32), and *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8), the defendants never claimed during the trial that they were at any time insane. In *Starr v. State,* 134 Ga. App. 149 (213 SE2d 531), there was no request for a charge of insanity.

In *Treadwell v. State,* 129 Ga. App. 573 (200 SE2d 323), no evidence of insanity was presented. *Keener v.*

*State,* 97 Ga. 388 (24 SE 28), dealt with the issue of the burden of proof of insanity. And, in *Woods v. State,* 134 Ga. App. 726 (215 SE2d 734), the defendant moved for a new trial on general grounds only.

*Judgment reversed. Bell, C. J., and Clark, J., concur.*

SUBMITTED JULY 13, 1976 — DECIDED SEPTEMBER 27, 1976 — REHEARING DENIED OCTOBER 22, 1976 — 

*Cook & Palmour, Bobby Lee Cook, Johnson & Beckham, J. Eugene Beckham, Jr.,* for appellant.

*William F. Lee, Jr., District Attorney, Robert H. Sullivan, Assistant District Attorney,* for appellee.