## A95A1981. MOORE v. THE STATE.
### (469 SE2d 211)

BEASLEY, Chief Judge.

Moore was found guilty by a jury of two counts of aggravated assault (OCGA § 16-5-21), possession of a firearm during commission of a crime (OCGA § 16-11-106), and interference with government property (OCGA § 16-7-24). After he was sentenced and his motion for new trial was denied, he brought this appeal, enumerating four alleged errors.

The incident occurred shortly after 5:00 a.m. on the morning of February 12, 1994, at the home at which Moore lived with his parents. The night before, he and his girl friend Stephanie went with friends to a nightspot where he drank whiskey and beer and became drunk. He also smoked marijuana and consumed Valium. They left on foot at about 2:30 a.m. and hitched a ride to the house. After arguing with his girl friend and mother, he began to damage the inside of the house with two baseball bats, an ax, a shotgun, a rifle and his fists.

Shooting from the hip with the rifle, he fired one shot towards the ceiling of his parents' bedroom and one into a wall near the ceiling in the kitchen. During this time his father climbed out a window to summon help from the sheriff, and his mother and Stephanie tried unsuccessfully to stop Moore's behavior. After the deputy sheriffs arrived, the women left the house separately and obtained shelter be-

hind the deputy sheriffs' car.

At first the deputy sheriffs tried to talk with Moore in the house, but he appeared to be going for a gun so they left. Four more shots were fired by Moore at the officers outside, some of which struck the two patrol cars, and the officers returned fire until he surrendered. A live round had jammed in the breech of his bolt-action rifle.

In an interview that afternoon, Moore told the officer he did not recall "what made [him] that mad" and that he "shot a cop" to get rid of the officers but was careful not to endanger "an old lady that lives next door."

1. Moore requested a jury charge on the defenses of misfortune and accident, but the court refused to give it, prompting the first enumeration of error. The charge, based in part on OCGA § 16-2-2, was properly rejected because there was not even slight evidence to support it. Cf. *Facison v. State*, 152 Ga. App. 645 (2) (263 SE2d 523) (1979); *Koritta v. State*, 263 Ga. 703, 704 (438 SE2d 68) (1994). The law is that "unless there [is] evidence to authorize a finding that the . . . shot(s) had been fired without any 'criminal scheme or undertaking, intention, or criminal negligence' on the part of the appellant, the trial court correctly refused to give a charge on the defense of accident." *Campbell v. State*, 263 Ga. 824, 825 (3) (440 SE2d 5) (1994), citing OCGA § 16-2-2. As the State points out, Moore knew he was firing the high-powered rifle in the direction of his mother, girl friend, and two law enforcement officers. A jury could not find that his actions and manifested intent constituted an accident or simply misfortune. *New v. State*, 260 Ga. 441 (396 SE2d 486) (1990). See also *Stewart v. State*, 261 Ga. 654 (409 SE2d 663) (1991); *Sumner v. State*, 210 Ga. App. 856 (437 SE2d 855) (1993). In *Teasley v. State*, 228 Ga. 107 (184 SE2d 179) (1971), defendant shot at a locked metal box for the purpose of opening it, whereas Moore shot at the interior of the house and at the people inside.

2. The trial court did not err in calling the court-appointed mental health expert to illuminate for the jury Moore's mental condition and capacity at the time of the acts charged.

The witness was not called by the State but by the court itself, in accordance with OCGA § 17-7-130.1. Thus his name was not required to be listed by the State in response to Moore's demand under OCGA § 17-7-110, even after the State received notice (pursuant to Uniform Superior Court Rules 31.4 and 31.1) of intent to raise issues of insanity and mental incompetence. In response to Moore's demand for scientific reports, the State did furnish a copy of the examining psychologist's report, even though Moore's counsel had already been mailed a copy by the expert over two months prior to trial. Counsel knew the week before trial this expert was to be on call.

Moore himself triggered the calling of the expert by the court. By

his filing a notice of intent to interpose the defense of insanity, the court was compelled to appoint a psychiatrist or licensed psychologist to examine him "and to testify at the trial." OCGA § 17-7-130.1. The fact that the court ordered the evaluation prior to the filing of the notice does not require the appointment of another expert, either as a matter of statutory construction or common sense. The statute states that appointment is necessary "when," not "after," defendant notifies the State and the court that sanity will be an issue. To require a second evaluation by the same or another expert would make futile the first evaluation, which is not challenged as being non-objective or conducted by an incompetent expert. The court's early appointment facilitated the proceedings and provided expeditious information to defense counsel as well as to the court and the State, not only with respect to possible defenses but also with respect to competence to stand trial in the first place.

Moreover, the pre-notice appointment was made "by agreement of the parties" and, after raising the defense by notice, Moore never sought the appointment of another expert. Nor did he call one as his witness.

Moore has cited no case in support of his position on this point. On the other hand, *Tolbert v. State*, 260 Ga. 527, 528 (2) (b) (397 SE2d 439) (1990), and USCR 31.5 support the trial court's action.

3. Division 2 answers the third enumeration of error, which is that Moore was entitled to have another psychiatrist or licensed psychologist appointed to examine him and testify at trial after he filed notice of an insanity defense. He mistakenly considers the court-appointed clinical psychologist, who was Director of Forensic Services at Northwest Georgia Regional Hospital, as the State's witness. There is no evidence that the State asked for this particular person to perform the tasks assigned by the court in its order for mental evaluation. Both parties agreed to the order, as stated above, and it named only the Department of Human Resources or Forensic Psychiatry Service, not a specific individual. All evidence of record is that the expert was independent of either party and was impartial. In addition, he was called as a witness by the court after both parties had rested.

The court did not err in failing to appoint a second expert either sua sponte or to meet the requirement of OCGA § 17-7-130.1.

4. When the court called the expert who had examined and evaluated Moore, the court carefully instructed the jury that he would be "the court's witness." The court also explained what that meant, that both sides would be permitted to examine both directly and by cross-examination. That is precisely what the statute provides. OCGA § 17-7-130.1.

The inadvertent one-time reference to the expert as "State's witness" did not constitute reversible error. In the first place, it was not

part of the court's instruction to the jury but was a direction to the bailiff to bring the witness into the courtroom. In the second place, when considered in the context of the immediately preceding instruction and the manner in which witness examination was conducted thereafter, the possibility is nil that the jury considered the witness to be that of the State.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JANUARY 22, 1996 — 
RECONSIDERATION DENIED MARCH 5, 1996 — 

*Hill & Henry, Larry B. Hill, W. Ralph Hill, Jr., Christopher A. Townley, for appellant.*

*Ralph L. Van Pelt, Jr., District Attorney, for appellee.*