## 28042. SMITH v. THE STATE.

SUBMITTED JUNE 29, 1973—DECIDED
SEPTEMBER 5, 1973.

*Thomas A. Roach,* for appellant.

*C. B. Holcomb, District Attorney, B. B. Robertson, Arthur K. Bolton, Attorney General, Courtney Wilder Stanton, Daniel I. MacIntyre, IV, Assistant Attorneys General, George D. Lawrence, Deputy Assistant Attorney General,* for appellee.

MOBLEY, Chief Justice. Herbert Dean Smith was jointly indicted with Charles Bennett, James Lingerfelt, and Marcus W. Ratledge for the murders of William Cantrell and Larry Mulkey. Smith was tried separately. He was found guilty, and sentenced to life imprisonment for each murder, the sentences to be served consecutively. His motion for new trial, as amended, was denied, and he appeals from his conviction and sentence, and the denial of his motion for new trial.

It is strongly urged by the appellant that the verdict was without evidence to support it.

William Cantrell, Deputy Sheriff of Forsyth County, while in the performance of his duties, and Larry Mulkey, who was with him, were murdered early Monday morning, January 10, 1972. Their bodies were discovered in the trunk of the police car in which they had been riding. The cause of their deaths was multiple bullet wounds.

Two burglaries had occurred in the county on

Wednesday night, January 5, 1972, or early the next morning, and another burglary had occurred on Saturday night, January 8, 1972, or early the next morning. The transcript shows that the murders occurred while Deputy Sheriff Cantrell was investigating the latter burglary.

The license number of a car was found in the police car in which the bodies were found, and a police alert was issued to stop this car. The car was followed by police officers in Atlanta, and Ratledge was apprehended after he abandoned the car. The murder weapon was in the possession of Ratledge when he was captured. The evidence showed that this weapon had been purchased by Lingerfelt. The car abandoned by Ratledge contained stolen merchandise from one of the Forsyth County burglaries on Wednesday night, and from the burglary on Saturday night.

The following is the testimony relied on by the state to prove the participation of the appellant in a burglary conspiracy in Forsyth County with the co-indictees.

Lt. Bert Frye, with the Georgia Bureau of Investigation, testified: In the investigation of the murders the witness had three conversations with the appellant. The appellant told him the following: The appellant met Ratledge while in the DeKalb County Jail. After he was released on bond he received a call from Ratledge and went to Atlanta and met Ratledge at an all-night shopping center. This was on January 5. They talked for a while, and Ratledge came to Forsyth County looking for a place to stay. He had recommended the Lakeview Motel to Ratledge. He did not come to Forsyth County with Ratledge, but came to the Lakeview Motel later, where he met Ratledge. Ratledge got in the car with him and they drove to Lingerfelt's home. Lingerfelt "had been wanting a job done for some time." He did not want to talk to the witness about this job. It was after he received the call from Ratledge that he (or they) decided

that the job would be done that night. It was decided that Bennett would be the lookout while the job was being done. He and Ratledge went to the Globe Oil Station, and stayed there for some time. Later on they saw Lingerfelt and Bennett going past the station. He and Ratledge drove to a roadside park, where the car was parked in which Lingerfelt and Bennett were riding. After a few minutes he and Ratledge left. He did not want to talk to the witness about where they went. About 4:00 a.m. on January 6, the four men met back at Lingerfelt's home, and stayed there for a while. He did not want to talk to the witness about what they did there. He then carried Ratledge back to the Lakeview Motel and left him.

Mrs. James Lingerfelt testified that she saw the appellant and Ratledge late in the afternoon of Wednesday before the murders on Monday, at her trailer. They came together in the appellant's car. She heard them discuss some kind of gun. Later she noticed the absence of a gun that was there prior to the time they were there. She did not know what happened to the gun. That was the last time she saw the appellant until two or three weeks later when he came by their trailer. She did not see the appellant on Saturday before the murders.

In his statement the appellant related that: He met Ratledge while in jail. After he got out, and Ratledge had escaped from jail, Ratledge called him and asked him if there was a place in Forsyth County where he could stay. He met Ratledge in Atlanta and talked with him and told him the only place he knew was the Lakeview Motel. Later he saw Ratledge at the motel and took Ratledge to see if Lingerfelt could find Ratledge a place to stay. On their way back to the motel they went by the Globe Station and got some gas and stayed there a while. Lingerfelt drove by several times, and he pulled into a roadside park beside Lingerfelt. When he saw that Bennett was with Lingerfelt, he left because he could not get along with Bennett. He and Ratledge went back to the

motel, and the next morning about 7:00 o'clock they went back to Lingerfelt's, but Bennett was there, and they left and went back to the motel. That was the last time he saw Ratledge until after Ratledge was in jail. He "didn't kill nobody and didn't steal nothing." His only guilt was helping a fugitive.

Should we assume that the evidence of admissions of the appellant was sufficiently corroborated (see Code § 38-420) to authorize the jury to find that he was a conspirator in an enterprise to commit the two burglaries which occurred on Wednesday night prior to the murders on Monday, that is all that this evidence shows. There is no evidence that the alleged conspiracy was to continue through a series of burglaries, and there is no evidence that the appellant participated, either actively or as a conspirator, in the burglary on Saturday, which the deceased deputy sheriff was investigating when he was murdered.

The district attorney in his brief quotes an excerpt from the testimony of Lt. Bert Frye in which this witness stated that he told counsel for the appellant that Lingerfelt stated to him that the appellant and Ratledge came to Lingerfelt's home on Saturday afternoon to inquire about a place for Ratledge to stay in Forsyth County. This was not competent evidence to prove that the appellant was present in the county on the day of the second burglary, since it was hearsay testimony and without probative value.

The district attorney argues that even if the appellant only conspired to commit the burglary on Wednesday night, the murders would be imputable to him because they were committed by a co-conspirator to prevent discovery of the co-conspirator's participation in the Saturday night burglary, which would have led directly to the discovery of the participants in the burglaries committed on Wednesday night, in which the appellant was involved.

"The rule that when individuals associate themselves in an unlawful enterprise, any act done in pursuance of the conspiracy by one of the conspirators is in legal contemplation the act of all, is subject to the qualification that each is responsible for the acts of the others only so far as such acts are naturally or necessarily done pursuant to or in furtherance of the conspiracy." *Handley v. State,* 115 Ga. 584 (41 SE 992); *Wall v. State,* 153 Ga. 309, 318 (112 SE 142); *Clarke v. State,* 221 Ga. 206, 212 (144 SE2d 90).

The murder of the officer and his companion, to prevent an investigation of a crime in which the appellant was not involved, was not an act naturally or necessarily done in pursuance of the conspiracy in which he may have been involved.

The evidence was not sufficient to support the verdict, and the trial judge erred in overruling the general grounds of the motion for new trial. This error requires a reversal of the conviction, and it is unnecessary to deal with the other enumeration of errors.

*Judgment reversed. All the Justices concur.*