## 28131. COLEY v. THE STATE.

PER CURIAM. We decide in this case the constitutionality of Ga. L. 1973, p. 159, et seq. (Code Ann. § 27-2534.1 et seq.) authorizing the imposition of the death penalty in Georgia under certain circumstances for specified crimes. The appeal represents an attack upon Georgia's death penalty revived by the 1973 General Assembly following its demise by virtue of the decision of the Supreme Court of the United States in Furman v. Georgia and Jackson v. Georgia, 408 U. S. 238 (92 SC 2726, 33 LE2d 346).

The revival statute passed by the General Assembly became effective March 28, 1973. Ga. L. 1973, p. 159. The crimes with which the appellant in this case was charged occurred on April

5, 1973; indictments were returned against him on April 17, 1973; his trial began on April 24, 1973; and sentences were imposed on April 27, 1973.

The appellant was convicted for rape and the sentence imposed was death; he was convicted for armed robbery and the sentence imposed was twenty years; he was convicted on a second charge of armed robbery and the sentence imposed was twenty years; and he was convicted for kidnapping and the sentence imposed was twenty years.

## I.

The fourth enumerated error attacks Georgia's new death penalty statute as being unconstitutional in the light of Furman v. Georgia and Jackson v. Georgia, supra.

The Georgia statute involved in Jackson was as follows: "The crime of rape shall be punished by death, unless the jury recommends mercy, in which event punishment shall be imprisonment for life: provided, however, the jury in all cases may fix the punishment by imprisonment and labor in the penitentiary for not less than one year nor more than twenty years." Code § 26-1302. This statute was in effect prior to July 1, 1969, when it was superseded by the Criminal Code of Georgia. Jackson had been convicted pursuant to this statute and sentenced to death. The Supreme Court of the United States said: "The court holds that the imposition and carrying out of the death penalty in these cases constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. The judgment in each case is therefore reversed insofar as it leaves undisturbed the death sentence imposed, and the cases are remanded for further proceedings." 408 U. S. 238, 239.

The present Georgia statute, a part of the Criminal Code of Georgia effective July 1, 1969, provides in part as follows: "A person convicted of rape shall be punished by death or by imprisonment for life, or by imprisonment for not less than one nor more than twenty years." In 1973, the General Assembly of Georgia, presumably because it believed that the Furman and Jackson decisions had nullified the death penalty as contained in Code Ann. § 26-2001, enacted a new criminal procedure statute (Code Ann. § 27-2534.1) which established ten statutory aggravating circumstances with respect to the crime of rape and other enumerated crimes; and this statute further provided in section (c) that unless the fact-finder determined that at least one of these enumerated statutory aggravating circumstances existed,

then "the death penalty shall not be imposed." The new Georgia statute also added a new Code section, reading in pertinent parts as follows:

"27-2537. Review of death sentences. — (a) Whenever the death penalty is imposed, and upon the judgment becoming final in the trial court, the sentence shall be reviewed on the record by the Supreme Court of Georgia. The clerk of the trial court, within ten days after receiving the transcript, shall transmit the entire record and transcript to the Supreme Court of Georgia together with a notice prepared by the clerk and a report prepared by the trial judge. The notice shall set forth the title and docket number of the case, the name of the defendant and the name and address of his attorney, a narrative statement of the judgment, the offense, and the punishment prescribed. The report shall be in the form of a standard questionnaire prepared and supplied by the Supreme Court of Georgia.

"(b)  The Supreme Court of Georgia shall consider the punishment as well as any errors enumerated by way of appeal.

"(c)  With regard to the sentence, the court shall determine:

"(1)  Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and

"(2)  Whether, in cases other than treason or aircraft hijacking, the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in Section 27-2534.1 (b), and

"(3)  Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

"(d)  Both the defendant and the State shall have the right to submit briefs within the time provided by the court, and to present oral argument to the court.

"(e)  The court shall include in its decision a reference to those similar cases which it took into consideration. In addition to its authority regarding correction of errors, the court, with regard to review of death sentences, shall be authorized to:

"(1)  Affirm the sentence of death; or

"(2)  Set the sentence aside and remand the case for resentencing by the trial judge based on the record and argument of counsel. The records of those similar cases referred to by the Supreme Court of Georgia in its decision, and the extracts prepared as hereinafter provided for, shall be provided to the resentencing judge for his consideration."

The question that we are now called upon to answer is this: Can the death penalty be imposed in Georgia pursuant to Code Ann. § 26-2001 and Code Ann. § 27-2534.1 in the face of the Eighth and Fourteenth Amendments to the Constitution of the United States as those Amendments have been construed and applied by the Supreme Court of the United States in the Furman and Jackson cases, supra?

Prior to the Furman and Jackson decisions by the Supreme Court of the United States this court had consistently held that the imposition of the death penalty, even under a discretionary statute which allowed the jury to impose the death sentence or impose a lesser sentence, was not violative of the Eighth and Fourteenth Amendments to the United States Constitution. See *Abrams v. State,* 223 Ga. 216 (154 SE2d 443), and *Sims v. Balkcom,* 220 Ga. 7 (136 SE2d 766). However, this court is bound by the Constitution of the United States as its provisions are construed and applied by the Supreme Court of the United States. Code Ann. § 2-8001 and annotations thereunder.

As our decision necessarily involves the decision of the U. S. Supreme Court in Furman and Jackson, we must look first to these cases for guidance in our decisional process. The dissenting opinion written by Mr. Chief Justice Burger in Furman and Jackson, with whom Mr. Justice Blackmun, Mr. Justice Powell and Mr. Justice Rehnquist joined, observes: "that only two members of the court, Mr. Justice Brennan and Mr. Justice Marshall, have concluded that the Eighth Amendment prohibits capital punishment for all crimes and under all circumstances." 408 U. S. 375.

What single grievance is common to the concurring opinions in these two cases? Perhaps none can be isolated with certainty, but at least one common concern is inferred from reading the concurring opinions. Mr. Justice White, for example, took exception to "the recurring practice of delegating sentencing authority to the jury *and the fact that a jury, in its own discretion and without violating its trust or any statutory policy, may refuse to impose the death penalty no matter what the circumstances of the crime."* (Emphasis supplied.) 408 U. S. 314. Mr. Justice Douglas touched the same "Achilles heel" in speaking of "a system of law and of justice that leaves to the uncontrolled discretion of . . . juries the determination whether defendants committing these crimes should die or be imprisoned. Under these laws no standards govern the selection of the penalty.

People live or die, dependent on the whim of . . . [the jury]." 408 U. S. 253. And, Mr. Justice Brennan noted, "There is a strong probability that [death] is inflicted arbitrarily." 408 U. S. 305. It is, also, evident that the arbitrary imposition of the death penalty, under the pre-existing law in Georgia, was a main concern of Mr. Justice Stewart as he observed "these death sentences are cruel and unusual in the way that being struck by lightning is cruel and unusual . . . I simply conclude that the Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed." 408 U. S. 309, 310. Finally, Mr. Justice Marshall found the court had some complicity in previously allowing arbitrary imposition of the death sentence when he observed that, "In McGautha v. California, 402 U. S. at 207, . . . , this court held: 'that committing to the untrammeled discretion of the jury the power to pronounce life or death in capital cases is [not] offensive to anything in the Constitution.' This was an open invitation to discrimination." 408 U. S. 365.

Although opinions may differ as to the parameters of the Court's holding in Furman it is evident the court did not hold "capital punishment is per se violative of the Eighth Amendment; nor has it ruled that the punishment is barred for any particular class or classes of crimes." 408 U. S. 396. (Burger, dissenting). And, as the Chief Justice's dissent points out: "The decisive grievance of the [concurring] opinions . . . is that *the present system of discretionary sentencing in capital cases has failed to produce evenhanded justice.*" (Emphasis supplied.) 408 U. S. 398.

We reach then the threshold question of whether only mandatory death sentences will pass constitutional muster or whether there is some constitutionally acceptable area in which the States may legislate between arbitrary imposition on the one hand and mandatory imposition on the other. Obviously, there is no sure answer to this question without further clarification from the United States Supreme Court. Clairvoyance is almost necessary for even an educated guess as to what sort of system of dispensation of capital punishment is permissible short of mandatory imposition. The U. S. Supreme Court's multiple-opinion decision in Furman and Jackson seems to leave the door ajar, however, at least to some extent, for new legislation by the States permitting the exercise of some controlled discretion through the use of objective standards by

which the sentencing authority may be guided in imposing the penalty of death. The States are free, we must conclude, to provide a new system short of mandatory application, and we thus need only determine at this time whether Georgia's new system can be employed without arbitrary application of the death penalty found to be fatal under the system extant at the time the Furman decision was rendered.

Can Georgia's new statute "produce evenhanded justice"? The essential question is not whether our new death statute permits the use of some discretion, because admittedly it does, but, rather, whether the discretion to be exercised is controlled by clear and objective standards so as to produce non-discriminatory application. After all, some discretion is inherent in any system of justice, from arrest to final review. In the same context, for example, the U. S. Supreme Court's "decision to grant or deny certiorari is by law discretionary and the decision to hear argument on appeal has of necessity also come to depend on an element of discretion." Goldberg and Dershowitz, Declaring the Death Penalty Unconstitutional, 83 Harv. L. Rev. 1773, 1803. Logically, it is not discretion per se which must be condemned, but it is unguided discretion that does not "produce evenhanded justice."

Georgia's new statutory scheme is designed to accomplish the following objectives to meet the U. S. Supreme Court's concern with arbitrariness. First, the new statute substantially narrows and guides the discretion of the sentencing authority to impose the death penalty and allows it only for the most outrageous crimes and those offenses against persons who place themselves in great danger as public servants. In addition, the new statute provides for automatic and swift appellate review to insure that the death penalty will not be carried out unless the evidence supports the finding of one of the serious crimes specified in the statute. The statute also requires comparative sentencing so that if the death penalty is only rarely imposed for an act or it is substantially out of line with sentences imposed for other acts it will be set aside as excessive. And, finally, the statute requires this court to make certain the record does not indicate that arbitrariness or discrimination was used in the imposition of the death sentence.

These standards in the new Georgia Statute meet the criticism expressed by a majority of the U. S. Supreme Court in the Furman and Jackson decision. It is noted the Supreme Court of

Florida, in a 5-2 decision rendered July 26, 1973, reached the same conclusion respecting the constitutionality of Florida's new death statute, which, as drawn, is remarkably similar to our Georgia statute. See State v. Dixon, 283 S. 2d 1 (Fla.)

We conclude that the 1973 death penalty statute, enacted by the Georgia Legislature, is not subject to the constitutional attack made on it in this case, as we believe the system of dispensation of the death penalty provided by the statute does not offend the principles of decision of the U. S. Supreme Court in Furman and Jackson.

## II.

We turn next to a review of the death sentence imposed in this case. As we have seen from the provisions of the statute, "[W]henever the death penalty is imposed, . . . the sentence shall be reviewed on the record by the Supreme Court of Georgia." Standards were written into this statute by the General Assembly that must be used by this court in reviewing each death sentence. The statute states that the court shall determine: (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (2) whether the evidence supports the jury's finding of a statutory aggravating circumstance; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Code Ann. § 27-2537 (c) (1-3).

We have carefully reviewed the evidence and sentence in this case and compared them with the evidence and sentences in similar cases. A list of the similar cases which we took into consideration in reviewing the record in the present case is attached as an appendix to this opinion. Using the standards prescribed for our review by the statute, we have concluded that the sentence of death imposed in this case was not imposed under the influence of passion, prejudice or any other arbitrary factor and that the evidence supports the jury's finding of statutory aggravating circumstances. However, a comparison of the evidence and sentence in this case with that of previous cases reveals the sentence of death is disproportionate to the penalty of life imprisonment imposed in similar cases. The prior cases indicate that the past practice among juries faced with similar factual situations and like aggravating circumstances has been to impose only the sentence of life imprisonment for the offense of rape, rather than death. We, therefore, conclude the death

penalty here imposed is excessive and have no alternative, under the language of the statute itself, except to set aside the sentence of death in this case. The statute, under these circumstances, requires that we "remand the case for resentencing by the trial judge based on the record and argument of counsel." The records of those similar cases, reviewed by this court in the present case, as required, shall be provided the trial court for its consideration upon resentencing.

### III.

Appellant also argues in this appeal that the trial court "erred in failing to quash the indictment or, in the alternative, failing to grant counsel a delay of the trial so he might have sufficient opportunity to prove his claim of systematic exclusion of blacks and women from grand and petit jury."

We note from the record that counsel did not move to quash the indictments but rather on the morning the trial began filed a motion for change of venue complaining of systematic exclusion of blacks and women. Under Ga. L. 1972, p. 536 (Code Ann. § 27-1201) a defendant in a criminal case may be granted a change of venue when, after submitting evidence, he satisfies the court that he cannot obtain an "impartial trial" from jurors available in the county where he is to be tried. Appellant, however, offered no evidence in support of his motion for a change of venue so that *what* the trial court had before it in ruling on the motion was, without more, appellant's naked contention respecting systematic exclusion of jurors. He now complains, on the other hand, he was denied an opportunity to compile evidence in support of the contention, but the record fails to support this conclusion of counsel. The grand jury returned indictments against appellant on April 17, 1973, but no objection was made to the composition of the grand jury until April 24, 1973, although appellant had counsel prior to indictment. We conclude this argument of counsel is also not of merit. See *Miller v. State,* 224 Ga. 627 (163 SE2d 730).

Though not necessary for decision, we also note appellant's claim of systematic exclusion of women and blacks from the grand and petit juries was not asserted by a written challenge to the array as provided by Code § 59-803, and, for this additional reason, the trial court properly overruled the motion for a change of venue. See *Williams v. State,* 210 Ga. 665 (82 SE2d 217), dealing with the necessity for filing a challenge to the array when objecting to an entire panel of jurors.

## IV.

The sufficiency of the evidence to support the conviction of the defendant for the offenses charged against him has not been argued and normally would be considered abandoned by appellant. *Schmid v. State*, 226 Ga. 70 (172 SE2d 616). However, in our review of the entire record, mandated under the 1973 Death Penalty Statute, we have concluded that the evidence fully supports the verdict reached by the jury on each charge. We, therefore, affirm the convictions.

For the reasons set forth in Division 2 of this opinion, the sentence of death imposed in this case is set aside and the case is remanded to the trial court for further proceedings in accordance with this opinion.

*Judgment affirmed in part; reversed in part with direction. All the Justices concur, except Nichols and Undercofler, JJ., who dissent from Division II and from the judgment, and Gunter, J., who concurs in part, dissents in part, and dissents from the judgment.* Argued September 10, 1973 — Decided March 8, 1974.

*Hill, Jones & Farrington, John D. Mattox, Bobby Hill,* for appellant.

*W. Glenn Thomas, Jr., District Attorney, Arthur K. Bolton, Attorney General, Courtney Wilder Stanton, Assistant Attorney General, David J. Bailey, Deputy Assistant Attorney General,* for appellee.

### Appendix

Similar Cases Considered by the Court. *Miller v. State,* 224 Ga. 627 (163 SE2d 730); *Ford v. State,* 227 Ga. 279 (180 SE2d 545); *Watson v. State,* 227 Ga. 698 (182 SE2d 446); *Lumpkin v. State,* 228 Ga. 391 (185 SE2d 770); *Fuller v. State,* 228 Ga. 546 (186 SE2d 888); *Allen v. State,* 228 Ga. 859 (188 SE2d 793); *Griffin v. State,* 229 Ga. 165 (190 SE2d 61); *Massey v. State,* 229 Ga. 846 (195 SE2d 28); *Hobbs v. State,* 229 Ga. 556 (192 SE2d 903); *McCrary v. State,* 229 Ga. 733 (194 SE2d 480); *Grantling v. State,* 229 Ga. 746 (194 SE2d 405); *Akins v. State,* 231 Ga. 411 (202 SE2d 62).

Nichols, Justice, dissenting. While I concur in Divisions 1, 3 and 4 of the majority opinion I must dissent from Division 2 and the judgment of reversal in part with direction. I would affirm the death sentence in this case.

Under the Act of 1973 (Ga. L. 1973, pp. 159, 166), this court is required to determine: "(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other

arbitrary factor, and (2) Whether, in cases other than treason or aircraft hijacking, the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in section 27-2534.1 (b), and (3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."

There is no evidence in this record that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.

The jury found that two statutory aggravating circumstances existed in the present case: The prior conviction of a capital felony and the commission of rape while engaged in the commission of another capital felony. Such findings were authorized by the evidence.

In determining whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases this court must consider both the crime and the defendant.

Under the provision of the 1973 Act, supra, this court has considered the following cases: *Ford v. State,* 227 Ga. 279 (180 SE2d 545); *Watson v. State,* 227 Ga. 698 (182 SE2d 446); *Griffin v. State,* 229 Ga. 165 (190 SE2d 61); *Hobbs v. State,* 229 Ga. 556 (192 SE2d 903); *Lumpkin v. State,* 228 Ga. 391 (185 SE2d 770); *Fuller v. State,* 228 Ga. 546 (186 SE2d 888); *Allen v. State,* 228 Ga. 859 (188 SE2d 793); *McCrary v. State,* 229 Ga. 733 (194 SE2d 480); *Grantling v. State,* 229 Ga. 746 (194 SE2d 405); *Akins v. State,* 231 Ga. 411 (202 SE2d 62); *Miller v. State,* 224 Ga. 627 (163 SE2d 730); *Massey v. State,* 229 Ga. 846 (195 SE2d 28). These 12 cases involve 14 separate defendants convicted of the offense of rape. Five of such trials took place prior to the enactment of the bifurcated trial procedure. Accordingly the records in these cases do not make it appear that the defendants there had prior records. In 4 of these 5 cases the death penalty was imposed under the unitary trial procedure where evidence of prior convictions could not be presented but in each case the victim was choked, beaten, cut, or otherwise tortured. In the remaining case tried under the unitary trial procedure, where a life sentence was imposed the defendant completed his purpose under threats without other injuries being inflicted upon the victim.

In the remaining 7 cases only one resulted in the death penalty. In that case the defendant not only had prior convictions but the victim was severely tortured.

In 3 of the remaining 6 cases the jury was instructed that they

could return a death sentence but they failed to do so when it was shown that the defendant had no prior record. In the other 3 cases, while the defendant had a prior record, the jury was instructed that the maximum sentence which could be imposed was a life sentence, which maximum sentence was imposed.

As I review the records in these cases a pattern clearly develops, to wit: where no prior convictions could be considered if brutality or torture was involved the maximum sentence permitted by law was imposed but in the absence of such factors a lesser sentence was given the defendant.

In all cases tried under the bifurcated trial procedure now in use where a prior conviction was shown the defendant was given the maximum sentence permitted under the court's instruction. Where no such prior conviction was shown the maximum sentence permitted by such instruction was not given.

Accordingly in the present case where evidence of a prior conviction of a capital felony was introduced and where the victim was tortured (by being locked in the trunk of an automobile and driven around for a period of time prior to the rape) I do not believe that the maximum sentence authorized by law is excessive or disproportionate to the penalty imposed in similar cases "considering both the crime and the defendant."

I am authorized to state Mr. Justice Undercofler joins in this dissent.

GUNTER, Justice, concurring and dissenting.

Concurring.

I concur in the judgment of the court setting aside the death penalty in this case, but my concurrence is for reasons different from those stated in the majority opinion. It is my view that Georgia's new system permitting the imposition of the death penalty is in violation of the Eighth and Fourteenth Amendments to the United States Constitution in the light of Furman v. Georgia and Jackson v. Georgia, 408 U. S. 238 (92 SC 2726, 33 LE2d 346). The statutes involved in this case are Code Ann. §§ 26-2001, 27-2534.1, and 27-2537.

The opinion of the Supreme Court of the United States in Furman and Jackson was a one-paragraph per curiam opinion. Five Justices wrote concurring opinions, and the Chief Justice and three Justices wrote dissenting opinions. My study of this aggregation of legal literature leads me to conclude the following: (a) Two members of the court held that the death penalty is constitutionally impermissible. (b) Three members of the court

held that a discretionary death penalty, meaning that the fact finder had the discretion to impose the death penalty or to impose a lesser penalty, is constitutionally impermissible. (c) Four members of the court held that a death penalty is not constitutionally proscribed.

Nevertheless, the magnitude of this five-four per curiam decision was pointed out by Mr. Justice Powell, one of the minority of four, when he said: "It is important to keep in focus the enormity of the step undertaken by the Court today. Not only does it invalidate hundreds of state and federal laws, it deprives those jurisdictions of the powers to legislate with respect to capital punishment in the future, except in a manner consistent with the cloudily outlined views of those Justices who do not purport to undertake total abolition. Nothing short of an amendment to the United States Constitution can reverse the court's judgments. Meanwhile all flexibility is foreclosed. The normal democratic process, as well as the opportunities of the several states to respond to the will of their people expressed through ballot referenda (as in Massachusetts, Illinois, and Colorado), is now shut off."

After the Furman and Jackson decisions, the Court of Appeals of Maryland in the case of Bartholomey v. State, 267 Md. 175 (297 A2d 696), said: "We entertain not the slightest doubt that the imposition of the death sentence under any of the presently existing discretionary statutes of Maryland which authorize, but do not require, that penalty is unconstitutional under Furman as violative of the Eighth and Fourteenth Amendments to the Federal Constitution. In other words, we think the net result of the holding in Furman is that the death penalty is unconstitutional when its imposition is not mandatory. [Cits.] That Furman invalidates all death penalties imposed pursuant to discretionary statutes is so, without regard to the nature of the offense, the particular circumstances under which the crime was committed, or the particular procedure followed in imposing the death sentence. Indeed, included among the 120 cases in which the Supreme Court remanded for further proceedings in light of Furman were cases involving murders of law enforcement officers (as in Bartholomey), mass killings, and aggravated rapes."

I am convinced that the Georgia statutes involved in this case authorize nothing more and nothing less than the discretionary imposition of the death penalty by the fact-finder. Although one or more of the ten statutory aggravating circumstances may be present and acknowledged, the fact-finder, whether it be judge or

jury can still decline to impose the death penalty. Code Ann. § 27-2534.1 (c) merely says that the death penalty shall *not* be imposed unless at least one of the statutory aggravating circumstances is present. There is no "requirement" that the death penalty be imposed if one or more of the statutory aggravating circumstances are present. It is conceded that in this case two of the statutory aggravating circumstances spelled out in the statute are present. Yet this court, upon review, has exercised its discretion pursuant to a nebulous measurement that I am unable to understand and had set aside the death penalty imposed by the fact-finder in this case.

The Georgia statutes involved in this case permit the arbitrary and discretionary imposition of the death penalty. A judge or jury can find one or several or all of the statutory aggravating circumstances present in a case and still decline to impose the death penalty. In a rape case of the most aggravated type, the jury can, in its discretion, and even though the statutory aggravating circumstances are found to be present, impose either the death penalty or a life sentence or a sentence of from one to twenty years. If the jury in such a case arbitrarily declines to impose the death penalty and imposes one of the two lesser penalties authorized by law, then that ends the matter. There is no review of the sentence in such a case, and the state cannot appeal, contending that the death penalty should have been imposed by the fact-finder.

I acknowledge that our judicial system and the over-all enforcement of the criminal law is pervaded by discretion. However, as I read Furman and Jackson, the Eighth Amendment does not permit the exercise of a discretion that extinguishes one man's life and permits another man to live, both of whom have committed exactly the same crime.

I would therefore hold that the current Georgia statutes authorizing the imposition of the death penalty have created a "discretionary system" as opposed to a "mandatory system" for imposing this ultimate penalty, and these statutes are unconstitutional. I think that the imposition of the death penalty in this case was constitutionally impermissible, and I concur in the judgment of the court setting it aside.

Dissenting.

I dissent from that portion of the court's judgment that remands the case to the trial court for re-sentencing procedures and declines to grant the appellant a new trial.

The record in this case reflects that the crimes with which the

appellant was charged occurred on April 5, 1973; counsel was appointed for him on April 9, 1973; indictments were returned against him on April 17, 1973; his trial on the four charges began on April 24, 1973; and sentences were imposed on April 27, 1973.

On April 20, 1973, the appellant's attorney served subpoenas on the County Board of Registrars and upon the County Jury Commissioners, and a portion of the subpoena served on the latter was as follows: "You are hereby informed that in the interest of time you will be asked the following questions: the number of jurors on your Grand Jury panel that are white; the number of jurors on your Grand Jury panel that are black; the number of jurors on your Grand Jury panel that are male; the number of jurors on your Grand Jury panel that are female. Also, you will be asked the number of jurors on your petit or trial jury panel that are white; the number of jurors on your trial or petit jury panel that are black; the number of jurors on your petit or trial jury panel that are male; and the number of jurors on your petit or trial jury panel that are female."

On April 24, 1973, appellant's counsel filed a motion for change of venue on several grounds. Among them was the contention that females and blacks were systematically excluded from the grand jury and from the trial jury in Wayne County. The motion alleged that there were only three females on a Grand Jury of twenty-two persons that returned the indictments; that there were only two blacks on the Grand Jury of twenty-two persons that returned the indictments; that there were only seven females on the trial jury of one hundred persons impaneled; and that there were only two blacks on the trial jury of one hundred persons impaneled.

Prior to the commencement of the trial on April 24, a hearing was conducted on the motion for change of venue. The subpoenaed county officials could not testify as to the statistical make-up of the grand jury and the trial jury in Wayne County. The apparent reason for their inability to provide this information was that they had been subpoenaed on the preceding Friday, the county offices were closed on the preceding Saturday and Sunday, and they had not had time preceding their testimony to secure such information from the county records.

During the course of the hearing and following the failure to elicit the statistical information from the county officials, appellant's counsel then made the following motion: "Your Honor, in view of the fact that this information of this nature is available in other counties, and as defense counsel for the accused, it seems

a little strange to me that our Board of Registrars do not have it in this county, and in all fairness to my client, I will have to again request the Court to instruct the Chief Registrar, and the other members of the Board of Registrars that are able to serve, to look into this matter."

The trial judge denied this request, and appellant's counsel then stated: "Well, just as a matter for the record, we take exception to the ruling for the following reasons, one is the limited time in which I, as defense counsel, had to get prepared for the trial of this case; and the fact that the defendant was in Reidsville, which required trips to Reidsville; and participated in other court cases to which I was appointed; and the further ground that it occurs to me that the Board of Registrars, the information that I have asked is the kind that should be kept current; and on those grounds and for those reasons I take exception to the court's ruling as a matter of record."

Following this hearing the appellant was arraigned on the four charges and the trial began.

While the burden is on the accused to show that a grand jury or trial jury is unconstitutionally assembled because of systematic exclusion of certain groups or classes, it seems to me that under the circumstances reflected in this record appellant's counsel did about all that it was possible for him to do in the short time between his appointment and the beginning of the trial. At the least, appellant's counsel should have been allowed additional time to prove the alleged unconstitutional composition of the grand jury which had indicted the appellant and the trial jury that was going to hear his case.

The short elapse of time, only eighteen days, between the commission of the crimes charged and the beginning of the trial convinces me, especially in view of the written motions filed by appellant's counsel, that the state's insistence upon the trial of this case on April 24, 1973, was a denial of appellant's right to have his appointed counsel have sufficient time to properly prepare and present appellant's case.

I would therefore reverse the judgments below and remand the case to the trial court for a new trial, specifically directing that appellant's counsel be allowed time and an opportunity to prove unconstitutional jury composition if he can.

For the reasons stated I concur in the judgment of the court prohibiting the death penalty in this case, but I dissent from the judgment of the court denying the appellant a new trial.