## 28996. GREGG v. THE STATE.

ARGUED JULY 9, 1974 — DECIDED OCTOBER 17, 1974 —
REHEARING DENIED OCTOBER 29, 1974.

*Harrison & Garner, G. Hughel Harrison,* for appellant.

*Bryant Huff, District Attorney, Arthur K. Bolton, Attorney General, John B. Ballard, Jr., Deputy Assistant Attorney General,* for appellee.

GRICE, Chief Justice.

Troy Leon Gregg was tried and convicted in the Superior Court of Gwinnett County for the murders and armed robberies of Fred Edward Simmons and Bob Durwood ("Tex") Moore. The case is before this court on appeal and mandatory review of the death sentences imposed on each of the four counts charging these crimes.

In substance, the issues involve (1) overruling the

motion for new trial; (2) failing to charge on voluntary manslaughter; (3) overruling a motion for acquittal; (4) allowance of evidence arising from arrest, conversations and statements of the appellant; (5) invalidity of the statute providing for capital punishment; and (6) illegal imposition of such punishment.

■ The first enumeration of error contends that the trial court erred in overruling the appellant's amended motion for new trial. The allegations of that motion are incorporated in the other enumerations of error except for the one based upon the general grounds. Although not argued by the appellant and thus normally deemed to be abandoned, we have nevertheless reviewed the transcript of evidence upon those grounds because of the capital punishment imposed.

The evidence which the state presented to prove guilt is that which follows.

On Wednesday morning, November 21, 1973, the appellant Gregg (age 25) and a traveling companion Floyd Ralford ("Sam") Allen (age 16) were hitchhiking north in Florida. They had only $8 between them when they were given a ride by the above named victims. About two hundred forty miles north of Miami on the Florida Turnpike, their automobile broke down. A Florida State Highway Patrolman accompanied Simmons and Moore to an automobile dealer where Simmons purchased a 1960 red and white Pontiac. Thereafter, they again picked up Gregg and Allen and resumed their journey northward. Enroute, both Simmons and Moore were seen in possession of large sums of money.

At the intersection of I-10 and I-75 in north Florida, another hitchhiker, Dennis Weaver, was picked up. He rode with the group until he got out at the intersection of I-85 and Highway 23 (North Druid Hills Road) in Atlanta, Georgia, at approximately 11:00 p.m. that evening. Gregg drove during the time Weaver was in the car while Simmons and Moore did considerable drinking. No fighting words were exchanged by any of the men while he was present.

Allen stated to a police detective in the appellant's presence as follows: that at the intersection of Georgia Highway 20 and I-85 in Gwinnett County, Georgia, they

stopped for a rest stop and Simmons and Moore got out; that Gregg turned around and told Allen to get out, "we're going to rob them"; that Gregg lay up on the car with a gun in his hand to get good aim and as Simmons and Moore were coming back up the bank he fired three shots; that one of the men fell and the other staggered; that Gregg then circled around the back of the car and approached the two men, both of whom were then lying in a drainage ditch; that Gregg placed the gun to one's head and pulled the trigger, then went quickly to the other one and placed the gun at his head and pulled the trigger again; that he took their money and whatever contents were in their pockets; and that he then told Allen to get in the car and they drove away.

The bodies of Simmons and Moore were found in the drainage ditch. A State Crime Laboratory medical examiner stated that death was caused by gunshot wounds, that Simmons had been shot in the right corner of the right eye in the region of the temple and Moore had been shot once in the right cheek of the face and once in the rear of his head.

On Friday morning, November 23, 1973, the hitchhiker, Dennis Weaver, went to an Atlanta restaurant for breakfast. While there he noticed an article on the front page of an Atlanta newspaper that led him to call the Gwinnett County Police Department. He told them he thought Gregg and Allen were going to Asheville, North Carolina. In response to a bulletin from Gwinnett County authorities, the Asheville Police apprehended Gregg driving Simmons' 1960 Pontiac at about 3:00 p.m. November 24, 1973. With him in the car were Allen and three other persons. A .25-caliber automatic pistol was found in Gregg's pocket. He also had approximately $107 in cash. Ballistics tests subsequently established that bullets from the gun in Gregg's pocket caused the death of Simmons and Moore.

Weaver accompanied police officers to Asheville where he identified the automobile in which he had ridden with Gregg and the two victims, and headbands worn by Gregg and Allen.

At the scene of the crimes, when confronted with a narration of the crimes by Allen, Gregg made no protest.

When asked if that was how it happened, he responded, "Yes, it was."

In rebuttal of defense evidence the state established that when asked by an Asheville detective why he did it, Gregg replied: "By God, I wanted them dead." Also, the state presented evidence that the appellant, while awaiting trial, wrote a letter to Allen, requesting that he testify as outlined in the letter, which accorded with the appellant's trial testimony.

The appellant testified that he and Allen were given a ride by Simmons and Moore; that throughout the trip Simmons and Moore were drinking beer or whiskey; that when they stopped at the intersection of Georgia 20 and I-85 "Fred hit me on the left jaw and knocked me in the drainage ditch and I got back up and asked him to leave me alone and he hit me the second time and knocked me back into the drainage ditch and when I come out of the drainage ditch the second time he came at me. I don't know what he had in his hand, it could have been a knife or pipe, I don't know what it was, but when he came at me the second time I shot him."

The appellant swore that he was very scared; that he left there because he was scared and drove the car up I-85 until they got to Howard Johnson's and stayed all night; that he did not mean to kill either one of the victims and shot them to protect himself; that he had over a hundred dollars on him by virtue of a cab driver he bumped into repaying money owed him; and that the new clothing and equipment in his possession when he was apprehended were either bought by Allen, found in the motel room, or already owned by him. He denied writing some of the words in the letter of instruction written to Allen while both were in jail.

We conclude that the verdict was not contrary to the evidence, that there was ample evidence to support it and that it was not contrary to law or the principles of justice and equity.

■ The second enumeration alleges that the trial court erred in failing to charge on voluntary manslaughter (Code Ann. § 26-1102; Ga. L. 1968, pp. 1249, 1276).

In *Williams v. State,* 232 Ga. 203, 204 (206 SE2d 37),

this court held that there must be at least some evidence to support a charge of voluntary manslaughter before it is required; and that "The evidentiary circumstances necessary to show voluntary manslaughter, as opposed to circumstances showing the homicide was justified, relate to a situation which arouses sudden passion in the person killing so that, rather than defending himself, he wilfully kills the attacker, albeit without malice aforethought, when it was not necessary for him to do so in order to protect himself. The distinguishing characteristic between voluntary manslaughter and justifiable homicide in such cases is whether the accused was so influenced and excited that he reacted passionately or whether the defendant acted simply to defend himself."

Here, however, the state's evidence showed only murder and armed robbery. Also, the thrust of the appellant's testimony was that of self-defense. He disclaimed any intent to kill, stating that he shot Simmons because Simmons had pushed him into a ditch and was threatening him with a knife or pipe, and that he shot Moore because Moore was beating Allen.

In our view, the evidence failed to show any "sudden, violent and irresistible passion resulting from serious provocation" (Code Ann. § 26-1102, supra). Therefore, voluntary manslaughter was not in issue and the trial court did not err in refusing to instruct the jury as to that principle of law.

■ The fourth enumeration insists that the trial court erred in overruling the motion for directed verdict of acquittal of the appellant as to Counts 2 and 4 of the indictment (armed robbery of Simmons of the automobile and armed robbery of Moore of $400 in money), in that the evidence was insufficient to sustain the verdict and sentence.

We do not agree.

(a) Evidence of ownership and possession of the Pontiac automobile by Simmons was as follows.

The Florida Highway Trooper referred to above testified that when he stopped to investigate a 1960 Ford which broke down on the Florida Turnpike, Simmons told him it was his; that Simmons asked the trooper to drive

him to buy another car; that he purchased a 1960 red and white Pontiac at Johnson's Auto Sales in Winter Garden, Florida; that he saw Simmons receive a bill of sale which Simmons and the seller, Ralph Johnson, signed and he witnessed; that he saw Simmons leave in the 1960 Pontiac with the bill of sale; that Simmons paid $275 for the car; and that actual title was to be picked up on the return trip. This was the same automobile with the bill of sale in it which the appellant was driving at the time of his arrest in Asheville.

This court has previously held that "In an indictment for robbery, ownership of the property taken may be laid in the person having actual lawful possession of it . . ." *Spurlin v. State,* 222 Ga. 179 (7) (149 SE2d 315).

In our view, the evidence here indicates both possession and ownership in Simmons as alleged in the indictment as the victim of the robbery.

(b) The transcript reveals that money was obtained by the appellant from Moore as alleged in Count 4 of the indictment.

In this connection, the Florida highway trooper testified that Simmons and Moore had a considerable amount of money; that after paying for the Pontiac they still had a "wad" left over; that it looked like a considerable amount of money, consisting of cash, tens and twenties, and bills of various denominations; that the tall man (Moore) had most of the money in several pockets; and that he kept pulling money out of all different pockets.

Also, Detective Blannott stated that the appellant told him that "we took four or five hundred dollars off them and left in their car"; that in the presence of Allen and the investigating officers, the appellant admitted that Allen's recitation of the facts was correct wherein he stated that appellant took the money from the victims' pockets after he had shot them and they were lying in the ditch; that the appellant had in his possession on arrest $107 in cash; and that he was wearing new boots and there was some new clothing in the car.

It was also shown that the officers later found additional new clothing, a stereo tape outfit and a new stereo tape player for a car in the motel where the

appellant was staying.

We hold that the evidence was sufficient to justify the jury in finding that money was taken from Moore by the appellant, as alleged in Count 4 of the indictment.

For these reasons, Enumeration 4 cannot be sustained.

■ Enumerations 5, 6 and 7 allege error (a) in overruling the motions to suppress evidence arising out of or subsequent to the arrest of the appellant; and (b) in overruling the objections to and allowing the witness Blannott to testify as to conversations with and the statement of the appellant and in allowing the statements and alleged confession of the appellant to be admitted into evidence.

As we view the evidence, there was probable cause for the appellant's arrest; and his subsequent statements were voluntarily made with full awareness of his rights.

First, a review of the evidence available to the Gwinnett County police is pertinent to a determination of whether there was probable cause for their bulletin through the National Crime Information Center which culminated in the appellant's arrest in Asheville.

This evidence showed that the bodies of Moore and Simmons were found, apparently dead of gunshot wounds. Weaver described Simmons' red and white Pontiac in great detail as well as the two other hitchhikers, Allen and the appellant, who were with Moore and Simmons when Weaver got out of the car in Atlanta, a short time before the murders occurred north of Atlanta. The Gwinnett County authorities knew that Allen and the appellant, and the automobile, had already left the scene of the crime with the possibility of extended flight.

Clearly, from this evidence there was probable cause for a reasonably prudent person to believe that a crime had been committed by the appellant. United States v. Harris, 403 U. S. 573, 584 (91 SC 2075, 29 LE2d 723) (1971); *Hood v. State,* 229 Ga. 435 (192 SE2d 154).

The Asheville authorities were, in effect, an extended arm of the Gwinnett County authorities in this situation. Therefore, if probable cause existed with the Gwinnett County police, they were justified in publishing

the bulletin, and the Asheville police were proper in making the arrest pursuant thereto. *Johnson v. State,* 230 Ga. 196 (1a) (196 SE2d 385).

Incident to the lawful arrest, search of the car stolen from the victims was likewise justified. *Johnson v. State,* 230 Ga. 196 (1b), supra. Moreover, under the circumstances here, the possibility of loss of the automobile and its contents as evidence also authorized the search. Chambers v. Maroney, 399 U. S. 42 (90 SC 1975, 26 LE2d 419); *Mitchell v. State,* 226 Ga. 450 (2) (175 SE2d 545); *Hood v. State,* 229 Ga. 435 (1), supra.

In addition, under prior holdings of this court, the appellant, having no property interest in the stolen automobile, lacked standing to complain of the search. *Dutton v. State,* 228 Ga. 850 (1) (188 SE2d 794) and citations.

We, therefore, determine that the arrest and the subsequent search of the appellant and the automobile in his possession were lawful.

Second, in regard to the admissibility of the appellant's statements, his alleged confession and the testimony of Detective Blannott as to his conversations with appellant, the following evidence was manifest.

Immediately after the appellant's arrest (at approximately 3:15 p.m.) he was given a warning that complied fully with the requirements of Miranda v. Arizona and he signed a waiver of rights form reciting the Miranda warning. Officer Gibson of the Asheville Police Department was present. At about 11:30 p.m. the appellant was questioned by Detective Blannott of the Gwinnett County Police Department who determined that the appellant had been advised of his rights and that he understood them.

Appellant then made a statement to Detective Blannott wherein he claimed to have shot in self-defense but admitted taking the automobile and the money. As appellant was about to leave for Georgia with the Gwinnett County authorities he asked Officer Gibson for a cigarette. Officer Gibson gave him a cigarette and asked appellant why he killed these people. Appellant's response was, "By God, I wanted them dead."

Then, as already pointed out, on their return to

Georgia with the appellant in custody, the Gwinnett County officers stopped at the intersection of Georgia 20 and I-85 shortly before five o'clock in the morning, and in the presence of the appellant, Allen narrated how the appellant shot the two men in accomplishing the robbery and then shot them in the head. At that point the Chief of the Gwinnett County Police Department asked appellant if that was how it happened and appellant replied that it was. The Chief then asked, "You mean you shot these men down in cold blooded murder just to rob them?" and the appellant replied, "Yes."

Approximately fourteen hours expired between the time the appellant was apprehended, advised of his rights and executed a waiver until the last incriminating statement was made. However, we cannot agree with his claim that the Miranda warnings had gone stale. See in this connection, *Watson v. State,* 227 Ga. 698 (182 SE2d 446) (7 or 8 hour lapse); *Moten v. State,* 231 Ga. 642 (203 SE2d 527) (2 day lapse).

Moreover, considering the totality of the circumstances, the record supports the determination by the judge and the jury in the Jackson v. Denno hearing that the statements were voluntarily made. *Wilson v. State,* 229 Ga. 395 (191 SE2d 783). Indeed, the appellant does not even contend that he was confused as to his right to remain silent or to have an attorney present.

Therefore, we rule that the statements and confession of the appellant were properly admitted in evidence. Since both the appellant and Detective Blannott testified, there was no problem of confrontation as was involved in *Bennett v. State,* 231 Ga. 458 (202 SE2d 99), and the testimony of Detective Blannott was likewise not erroneously admitted.

■ The enumeration complaining that the trial court erred in submitting the issue of death to the jury because such punishment constitutes cruel and unusual punishment contrary to the Eighth and Fourteenth Amendments of the United States Constitution cannot be sustained.

The appellant's death sentences were imposed pursuant to Ga. L. 1973, p. 159 (Code Ann. § 27-2534.1) and the constitutionality of that statute was upheld in

*Coley v. State,* 231 Ga. 829 (1) (204 SE2d 612); *House v. State,* 232 Ga. 140 (3) (205 SE2d 217); and *Eberheart v. State,* 232 Ga. 247 (1) (206 SE2d 12).

The constitutionality of the application of the death penalty to the appellant is determined in the sentence review by this court pursuant to the above statute in Division 6, infra.

6. In his final enumeration of error the appellant avers that the trial court erred in imposing four death sentences upon him. Inasmuch as this enumeration is directed to sentence appropriateness, the contentions urged in its support will be resolved in sentence review.

The death penalty in this case must conform to the standards set forth in Code Ann. § 27-2534.1, supra, if it is to pass the test of constitutionality. Thus this court must determine whether the sentences of death have been imposed under the influence of passion, prejudice, or any other arbitrary factor; whether the evidence supports the jury's finding of a statutory aggravating circumstance; and whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant, as required by Code Ann. § 27-2537 (c) (1, 3), supra.

We have reviewed the trial transcript and record, including the evidence, and we have made a comparison with the evidence and sentences in similar cases in accordance with the statutory mandate. Those similar cases considered by the court in reviewing the case are listed in an appendix attached to this opinion.

Using the standards prescribed for our review by the statute, our conclusion is that the sentences of death imposed here were not imposed under the influence of passion, prejudice or any other arbitrary factor.

In recommending the death penalty as to all four counts of the indictment, the jury found as follows: that the offenses of murder (Counts 1 and 3) were committed while the appellant was engaged in the commission of two other capital felonies, to wit, the armed robberies of Simmons and Moore (Code Ann. § 27-2534.1 (b, 2)) and for the purpose of receiving money and the automobile as described in the armed robbery indictments (Code Ann.

§ 27-2534.1 (b, 4)). The jury also found that the armed robberies were committed while the appellant was engaged in the commission of two capital felonies, to wit, the murders of Simmons and Moore (Code Ann. § 27-2534.1 (b, 2)), and for the purpose of receiving money and the automobile.

As we appraise it, the evidence supports the jury's findings of statutory aggravating circumstances as to the two counts of murder. After considering both the crimes and the defendant and after comparing the evidence and the sentences in this case with those of previous murder cases, we are also of the opinion that these two sentences of death are not excessive or disproportionate to the penalties imposed in similar cases which are hereto attached.

However, the death sentences imposed for the two armed robberies cannot be sustained.

Although there is no indication that these two sentences were imposed under the influence of passion, prejudice or any other arbitrary factor, the sentences imposed here are unusual in that they are rarely imposed for this offense. Thus, under the test provided by statute for comparison (Code Ann. § 27-2537 (b, 3)), they must be considered to be excessive or disproportionate to the penalties imposed in similar cases.

Furthermore, the two aggravating circumstances found by the jury in recommending death penalties for the two counts of armed robbery are not valid. Since the armed robberies were held to be aggravating circumstances authorizing the death penalties as to the murders, the murders cannot then be used in aggravation of the two armed robberies. The other aggravating circumstance enumerated by the jury in its verdict (commission of the armed robberies for the purpose of receiving money and the automobile) is not applicable to armed robbery since Code Ann. § 27-2534.1 (b, 4) refers only to the offense of murder, and thus it cannot be considered.

Therefore, as prescribed by the statute (Code Ann. § 27-2537 (c, 2)), the two sentences of death for the offenses of armed robbery must be set aside and the case remanded for resentencing by the trial judge on Counts

2 and 4 of the indictment, based upon the record and argument of counsel. The two death sentences for the offenses of murder (Counts 1 and 3 of the indictment) are affirmed.

See in this connection as to sentencing procedure, *Coley v. State,* 231 Ga. 829, supra; *House v. State,* 232 Ga. 140, supra; *Eberheart v. State,* 232 Ga. 247, supra.

*Judgment affirmed in part; reversed in part. All the Justices concur, except Undercofler and Hall, JJ., who concur specially in Division 6, Ingram, J., who also concurs specially, and Gunter, J., who dissents.*

APPENDIX

Similar cases considered by the court: *Henderson v. State,* 227 Ga. 68 (179 SE2d 76); *Hart v. State,* 227 Ga. 171 (179 SE2d 346); *Pass v. State,* 227 Ga. 730 (182 SE2d 779); *Watson v. State,* 229 Ga. 787 (194 SE2d 407); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431); *Sirmans v. State,* 229 Ga. 743 (194 SE2d 476); *Scott v. State,* 230 Ga. 413 (197 SE2d 338); *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805); *Bennett v. State,* 231 Ga. 458 (202 SE2d 99); *Howard v. State,* 231 Ga. 186 (200 SE2d 755); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441); *Morgan v. State,* 231 Ga. 280 (201 SE2d 468); *House v. State,* 232 Ga. 140 (205 SE2d 217); *Allen v. State,* 231 Ga. 17 (200 SE2d 106); *Smith v. State,* 230 Ga. 876 (199 SE2d 793); *Johnson v. State,* 231 Ga. 138 (200 SE2d 734) *Lingerfelt v. State,* 231 Ga. 354 (201 SE2d 445).

INGRAM, Justice, concurring specially.

Division 6 of the court's opinion presents the question of whether the armed robberies, considered as aggravated circumstances to authorize the death sentence for the two murders, became included crimes in the murders. If so, the convictions for the two armed robberies must be reversed under Code Ann. § 26-506. "[A] crime is an included crime and multiple punishment therefor is barred if it is the same as a matter of fact or as a matter of law as specified in the Criminal Code." *State v. Estevez,* 232 Ga. 316, 319 (206 SE2d 475).

The factual and legal tests required by Code Ann. § 26-505 (a) and (b), respectively, for determining whether

the crimes are the same or not reveal that the armed robberies in this case are not included in the offenses of murder. They are separate crimes for which a conviction for each is authorized.

The consideration of the armed robberies as aggravating circumstances during the sentencing phase of the trial to authorize imposition of the death sentences for the murders does not make the armed robberies a part of the murder convictions. A prior conviction of some other armed robbery, if it existed, could have been considered as aggravating circumstances to authorize the death penalty and the mere fact that these armed robberies were contemporaneous with the murders would not prevent their use as aggravating circumstances in this case. Thus, I conclude there is no prohibition in either the statutory limitation on multiple prosecution for the same conduct or in the death penalty statute (Code Ann. § 27-2534.1) which would prevent the consideration of the armed robberies in this case as aggravating circumstances to authorize the death sentences for the two offenses of murder.

GUNTER, Justice, dissenting.

I dissent because it is my view that Georgia's death penalty statutes are unconstitutional. See the concurring part of my concurring and dissenting opinion in *Coley v. State,* 231 Ga. 829.

Also, 1974 enactments by the Georgia General Assembly on this subject are as follows: "In all capital cases, other than those of homicide, when the verdict is guilty, with a recommendation to mercy, it shall be legal and shall be a recommendation to the judge of imprisonment for life. Such recommendation shall be binding upon the judge." Ga. L. 1974, p. 353. And, "in all cases in which the death penalty may be imposed and which are tried by a jury, upon a return of a verdict of guilty by the jury, the court shall resume the trial and conduct a presentence hearing before the jury. Such hearing shall be conducted in the same manner as presentence hearings conducted before the judge as provided in subsection (a) of this section. Upon the conclusion of the evidence and arguments, the judge shall

give the jury appropriate instructions, and the jury shall retire to determine whether any mitigating or aggravating circumstances, as defined in Code Ann. § 27-2534.1, exist and whether to recommend mercy for the defendant. Upon the findings of the jury, the judge shall fix a sentence within the limits prescribed by law." Ga. L. 1974, p. 357.

I conclude that these 1974 enactments by the Georgia General Assembly expressly place discretion in the sentencing fact-finder to impose or not impose the death penalty in any case. And this is what I understand to be constitutionally impermissible under the decision of the Supreme Court of the United States in Furman v. Georgia, 408 U. S. 238 (92 SC 2726, 33 LE2d 346).

I respectfully dissent.