30205, 30268. SMITH v. THE STATE (two cases).

JORDAN, Justice.

Appellants, husband and wife, were charged in two counts with the murder of Joseph Ronald Akins and his wife Juanita Knight Akins. At separate trials both were convicted and sentenced to death on each count. With minor exceptions, the enumerated errors are common to both cases. The cases were consolidated on appeal and will be thus treated.

Joseph Ronald Akins and his wife of twenty days, Juanita Knight Akins, were killed in a secluded area of a new housing development in Bibb County, Georgia, on August 31, 1974, by shotgun blasts fired at close range.

According to the state's evidence, Joseph Akins' former wife, appellant Rebecca Akins Smith Machetti, together with her husband, appellant John Eldon Smith, a/k/a Anthony Isalldo Machetti, a/k/a Tony Machetti, and John Maree plotted the death of Joseph Akins with the intent of redeeming the proceeds of Akins' insurance policies, and other benefits, the beneficiaries of which were Mrs. Machetti and her three daughters by her marriage to Akins. They were living in North Miami Beach, Florida at the time. According to the testimony of accomplice John Maree, he was to be paid $1,000 for his participation. He testified that he and the appellant Tony Machetti drove to Macon, Georgia, where they contacted Ronald Akins and lured him into the area of the crime, ostensibly to install a television antenna, and that when he and his wife arrived at the appointed time the appellant Tony Machetti killed both of them with a shotgun, after which he and Maree returned to North Miami Beach, Florida.

I. Enumerations of Error

1. In Enumeration 1 appellants allege that the

testimony of the accomplice, John Maree, was not corroborated in that there was no independent evidence which connected them with the alleged crimes, or the commission thereof.

As to appellant Tony Machetti, independent evidence established that John Maree's palm print appeared on the left front door of the automobile of the victim Ronald Akins in or near which the victims' bodies were found. This appellant insisted in two separate interviews with Florida police officers that he was with John Maree throughout the weekend on a fishing trip or business trip. The weekend included August 31, 1974, on which date at 5:15 a. m. the killings occurred.

Independent testimony from another witness established that appellant Tony Machetti was not at home on Friday evening August 30, 1974, or on Saturday, August 31, 1974.

Independent evidence established that a person with the American Express Card of John Eldon Smith rented a green Gremlin automobile from Avis Auto rental in Ft. Lauderdale, Florida on Friday, August 30, 1974. The rental agent compared the signature with the card because of the reward policy for stolen cards. She thought appellant looked familiar in the courtroom. Witnesses testified that an automobile of the same color and description was seen entering and leaving the crime scene on August 31 with a Florida license driven by the accomplice John Maree. The mileage driven on the automobile was 1,367 miles—more than adequate for a round trip of 1,208 miles from Ft. Lauderdale, Florida to Macon, Georgia.

John Maree's testimony that appellant Tony Machetti called his wife (the other appellant) from Jennings, Florida around 9:00 p. m. on the day of the killing is corroborated by telephone records that such a call was made to a pay station at a department store in North Miami Beach, Florida, that the Smith-Machetti family regularly used. An independent witness testified that appellant's wife went to this pay phone at the critical time to get a call from appellant. Appellant's own testimony was that he called his wife at this time although claiming he called her from Ft. Lauderdale. The

time-distance factors to Jennings, Florida from Macon, Georgia, are consistent with John Maree's testimony and the telephone company records.

As to Rebecca Akins Machetti, John Maree's testimony that he, appellant and her husband planned the fishing trip alibi for him and Tony Machetti for the weekend on which the murders were committed is corroborated by appellant's statement to different law enforcement officers that her husband was on a fishing trip from the afternoon of August 30, 1974 to 1:00 a. m. September 1, 1974. She later told another officer her husband had been on a fishing trip on the critical weekend and said her husband was with John Maree during this period of time.

Independent evidence corroborated John Maree's testimony concerning motives for the murder of Ronald Akins which were (1) insurance monies and (2) an attempt to establish Mafia ties for Tony Machetti. The divorce settlement itself verified his testimony concerning the benefit appellant could derive from the death of her ex-husband through insurance on his life and independent witnesses testified to appellant's alluding to Mafia connections or getting someone in Miami to "take care of" her ex-husband.

John Maree testified that appellant Rebecca Machetti made several telephone calls to an insurance agent in Macon in an effort to locate her ex-husband and his place of employment. This was corroborated by two employees at Ronald Akins' place of employment who testified that she called on August 12, 1974, trying to find if Mr. Akins was working and how she could reach him. In one of the conversations, she was told that Mr. Akins was on vacation and, according to Maree, appellant changed the plan to murder Mr. Akins to a later date.

An insurance agent verified John Maree's testimony concerning a call by appellant when she asked for his help in acquiring Mr. Akins' address and telephone number and mentioned sending two men to see her ex-husband on business.

John Maree's testimony that Allen Barfield was asked to come to Miami to create an alibi for appellant Rebecca Machetti is corroborated by Mr. Barfield's

testimony about the unusual demands made on him concerning cancelling plans which he had made for one of appellant's daughters to spend the weekend with him in Atlanta. He testified that in a telephone conversation on August 30, 1974, appellant insisted that he come to Miami, saying that she did not want him to be "in town (Macon, Georgia) that weekend," and that appellant demanded that he catch an airplane from the Atlanta airport rather than from Macon and instructed him not to leave his car at the Macon airport.

John Maree testified that Ronald Akins was lured to the area where he was killed by Tony Machetti telephoning him about installing a television antenna at the location. Appellant admitted in her testimony that Mr. Akins had done this type of work for many years. A note was found on Mr. Akins' body giving directions to the location.

John Maree testified that he was offered $1,000 to do the driving on the trip from Florida to Macon, Georgia, and demanded payment by a letter to appellant but never received the money. Appellant admitted at trial that she received such a letter demanding money but denied owing Maree any money. When asked what she did with the letter, appellant said that she "put that letter in the family Bible on the advice of my husband."

Coupled with these specific points of corroboration the jury was entitled to consider appellant's attempts to divert attention elsewhere by her claim that her ex-husband was a drug user, a pusher, and a homosexual.

Appellants rely on Code Ann. § 38-121 which provides that the testimony of a single witness is generally sufficient to establish a fact except where the only witness is an accomplice, in which case corroborating circumstances may dispense with another witness. Appellants contend that the testimony of John Maree, the accomplice, was not corroborated in that there was no independent evidence which connected them with the alleged crimes, or the commission thereof. In *West v. State,* 232 Ga. 861, 864 (209 SE2d 195) (1974) this court held: "The law is settled in Georgia that the corroborating facts or circumstances must connect the defendant to the crime or lead to the inference that he is guilty, and that such

corroboration must be independent of the accomplice's testimony. *Allen v. State,* 215 Ga. 455 (111 SE2d 70) (1959); *Price v. State,* 208 Ga. 695 (69 SE2d 253) (1952)."

"The quantum of testimony and its sufficiency to corroborate the testimony of an accomplice before a jury is a matter addressed entirely to the jury itself." *Brown v. State,* 163 Ga. 684, 691 (137 SE 31) (1927). In this case the jury could consider and rationally conclude that the appellant Tony Machetti was with John Maree throughout the weekend the murder occurred; that he was away from his home that weekend; that he rented an automobile of the same type and color seen entering the crime scene with his American Express card; and that he called his wife (the other appellant herein) from Jennings, Florida after the crimes were committed. Having concluded these facts they were entitled to find John Maree's testimony corroborated as to appellant Tony Machetti's connection with the crime as required by Code Ann. § 38-121 and *West v. State,* supra.

The jury could likewise consider and rationally conclude that the appellant Rebecca Akins Machetti covered for her husband and John Maree by telling authorities that they had been on a fishing trip; that she had threatened to get someone "to take care of" her ex-husband; that she made calls trying to locate her ex-husband stating that she was sending two men to see him; that she received a telephone report from her husband shortly after the crime was committed that they had "bagged two fish"; that she had called Allen Barfield to Florida to create an alibi for herself and that she tried to mislead police authorities by claiming that her ex-husband was a drug user, a pusher, and a homosexual. From this evidence the jury was entitled to find that John Maree's testimony was corroborated as to her connection with the crime as required by Code Ann. § 38-121 and *West v. State,* supra. As to both appellants the independent evidence is more than sufficient to merely cast on the appellants a grave suspicion of guilt. Enumeration 1 is without merit.

2. In Enumeration 2 the appellants allege the trial court erred in admitting numerous instances of hearsay

testimony as in furtherance of a conspiracy where no evidence of a conspiracy existed independent of the testimony of the alleged co-conspirator and accomplice, John Maree.

From our review of the evidence introduced at trial we conclude that the independent points of corroboration set forth in our consideration of Enumeration 1 is more than sufficient to establish that a conspiracy existed among these two appellants and John Maree. The transcript contains abundant evidence from which the jury could find such a conspiracy.

Code Ann. § 38-306 provides "After the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." A conspiracy having been shown to exist the testimony of the co-conspirator John Maree is admissible in reference to statements made in the course of and in furtherance of the conspiracy, or during the subsequent period of concealment. Dutton v. Evans, 400 U. S. 74 (1970); *Chatterton v. State,* 221 Ga. 424 (144 SE2d 726) (1965), cert. den. 384 U. S. 1015.

The jury found that a conspiracy existed as a determination of fact and such finding was within the exclusive province of the jury. *Mitchell v. State,* 202 Ga. 247 (42 SE2d 767) (1957).

This enumeration is without merit.

3. In Enumeration 3 the appellants allege the trial court erred in admitting testimony of John Maree as to hearsay statements allegedly made by Rebecca Machetti in violation of their rights under the confrontation clause of the Sixth Amendment of the United States Constitution and as to Tony Machetti where it was neither shown that Rebecca Machetti would refuse to testify or was otherwise unavailable to testify to the truth of such statements.

Any statements that John Maree attributes to Rebecca Machetti were subjected to a thorough and sifting cross examination and appellant had opportunity while testifying in her own behalf to rebut John Maree's testimony. As to this appellant no denial of confrontation is shown.

There is no requirement under these circumstances that Rebecca's refusal to testify or unavailability serve as a predicate of John Maree's testimony. In this state the declarations of one co-conspirator, made during the pendency of the conspiracy, are admissible against all. Code Ann. § 38-306. This statute has previously been upheld in the face of an attack based on the Sixth Amendment confrontation clause. Dutton v. Evans, 400 U. S. 74 (1970).

4. In Enumeration 4 the appellants allege the court erred in admitting the testimony of A. E. Wooters and Lawrence Bieltz concerning their interviews with the appellants, where the investigation had centered on the appellants as prime suspects prior to the questioning and where the questioning took place without informing the appellants of their constitutional rights in conformity with the Escobedo-Miranda decisions.

As to appellant Rebecca Machetti, the testimony reveals that although she was interviewed twice by Florida authorities and spoke with Bibb County Deputy Sheriff Wilkes by phone she was not advised of her constitutional rights as described in Miranda v. Arizona, 384 U. S. 436 (1966). She made no incriminating statements during the three interviews, she was not in custody, the investigation had not focused on her, her statements consisted of possible reasons for her ex-husband's death, and that her husband appellant Tony Machetti had been on a fishing trip on the weekend of the crime.

As to appellant Tony Machetti, the testimony reveals that he was interviewed twice by Florida authorities without being advised of his constitutional rights as described in Miranda v. Arizona, supra. Testimony was that these two interviews were investigative leads. Although Bibb County Deputy Sheriff Wilkes, who coordinated investigation of the homicides, characterized appellant as a "prime suspect" after the first interview, the investigation had not "focused on appellant." In the interviews appellant made no incriminating statements, repeated his statement of being on a business trip in Florida on the critical weekend, voluntarily came for the interviews and was not in custody as evidenced by his

refusal to be fingerprinted at the second interview, requiring a subpoena for this purpose.

Arrest warrants were not obtained until October 15, 1974, almost two weeks after these appellants' last interviews with police officers.

The case of Miranda v. Arizona contemplated an "in custody" interrogation. Miranda v. Arizona, supra; *Wilburn v. State,* 230 Ga. 675, 679 (198 SE2d 857) (1973); *Kemp v. State,* 227 Ga. 251, 252 (179 SE2d 920) (1971). The evidence in connection with the interviews in this case is outside the parameters of "custodial interrogation" delineated by the four criteria spelled out in Brown v. Beto, 468 F2d 1284, 1286 (5th Cir. 1972) in that at the time of the interviews: (1) the police did not have probable cause to arrest; (2) the subjective intent of police was to locate possible persons involved; (3) the appellants did not appear to believe themselves to be in custody and subjected to interrogation, and (4) the investigation had not at that time focused on the appellants as someone the state planned to indict.

This enumeration is without merit.

5. In Enumeration 5 the appellants allege that "Because there is no valid statute authorizing the death penalty for murder in Georgia, the Trial Court committed reversible error in imposing the death penalty in the present case."

The thrust of the appellants' argument here is that the United States Supreme Court in Furman v. Georgia, 408 U. S. 238 (1972) declared that portion of Code Ann. § 26-1101 (c) authorizing the imposition of a sentence of death unconstitutional, and this portion of the statute was never re-enacted.

In *Coley v. State,* 231 Ga. 829, 833 (204 SE2d 612) (1974) this court said: "Although opinions may differ as to the parameters of the court's holding in Furman it is evident the court did not hold 'capital punishment is per se violative of the Eighth Amendment; nor has it ruled that the punishment is barred for any particular class or classes of crimes.' . . And, as the Chief Justice's dissent points out: 'The decisive grievance of the (concurring) opinions . . . is that *the present system of discretionary sentencing in capital cases has failed to produce*

*evenhanded justice.'* (Emphasis supplied.) 408 U. S. 398."

The legislature rightly viewed the Furman decision as invalidating only the system under which the sentence was imposed prior to the enactment of Ga. L. 1973, pp. 159-72 and not that portion of Code Ann. § 26-1101 (c) authorizing imposition of a sentence of death for the offense of murder. During the time between the Furman decision and the effective date of the enactment of Ga. L. 1973, pp. 159-172, this state had no constitutional judicial system for imposing the death penalty and the only sentencing alternative for the offense of murder in Georgia was life imprisonment. *Massey v. State,* 229 Ga. 846, 848 (195 SE2d 28) (1972).

This enumeration is without merit.

6. In Enumeration 6 the appellants urge reversible error was committed by the trial court in overruling the demurrer to the indictment.

Appellants urged in their demurrers that the indictments in each count failed to allege any aggravating circumstances as specified in Georgia L. 1973, p. 159, which would authorize the death penalty, and that it was essential that the appellant know what aggravating circumstances it was contended by the state that would authorize the death penalty.

The aggravating circumstance found by the jury was that the murders were committed for the purpose of receiving money or other things of monetary value.

In *Eberheart v. State,* 232 Ga. 247, 253 (206 SE2d 12) (1974) this same issue was raised. We there said: "The bifurcated trial was created to withhold matters inadmissible on the issue of guilt or innocence from the jury until that issue had been determined. The statute is clear that the presentence hearing is for additional evidence and in no way excludes from consideration on sentence the matters heard on the issue of guilt or innocence."

In the cases sub judice no additional evidence in aggravation was offered during the sentencing phase of the trial. The aggravating circumstance was based on the evidence presented during the guilt or innocent phase of the trial.

In addition, we note that the district attorney served

notice on the counsel for appellant Tony Machetti on January 24, 1975, prior to trial beginning on January 27, 1975, and on appellant Rebecca Machetti on February 7, 1975, prior to her trial beginning on February 24, 1975, a notice to the defendant that the state intended to show aggravating circumstances, including the one found by the jury.

This enumeration of error is without merit.

7. Appellants' allegations in Enumeration 7 that the evidence presented in the trial of the case was insufficient as a matter of law to support the finding by the jury of the statutory aggravating circumstance necessary in cases imposing the death penalty and in Enumeration 10 that the death penalty was disproportionate to the sentence imposed in similar cases, are matters that must be considered by this court in sentence review.

8. In Enumeration 8 the appellants allege the trial court erred in excluding prospective jurors because of their conscientious reservations against imposing the death penalty in violation of the holding in Witherspoon v. Illinois, 391 U. S. 510.

The standards of jury selection applicable to death cases as set forth in Witherspoon as amplified in Boulden v. Holman, 394 U. S. 478, 481 (89 SC 1138, 22 LE2d 433) and Maxwell v. Bishop, 398 U. S. 262, 265 (90 SC 1578, 26 LE2d 221), are that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." See also *Miller v. State,* 224 Ga. 627 (8) (163 SE2d 730) (1968); *Simmons v. State,* 226 Ga. 110 (12) (172 SE2d 680) (1970); *Ross v. State,* 233 Ga. 361 (3) (211 SE2d 356) (1974).

The voir dire transcript in the case of Tony Machetti reveals that those jurors who indicated an unconditional reservation to the imposition of the death penalty were excused for cause by the trial court. This was entirely proper since they indicated that they would never vote to impose the death penalty under any circumstances. *McCorquodale v. State,* 233 Ga. 369 (13) (211 SE2d 577) (1974); *Ross v. State,* 233 Ga. 361 (3) (211 SE2d 356)

(1974); *Eberheart v. State,* 232 Ga. 247, 251, supra.

One juror after responding to three questions that he was unalterably opposed to capital punishment, and would under no circumstances vote to impose the death penalty responded to a question that he would follow the court's instructions. His excuse was proper.

The voir dire transcript in the case of Rebecca Machetti reveals that jurors who indicated an unconditional reservation to the imposition of the death penalty were excused for cause by the trial court.

This enumeration is without merit.

9. In Enumeration 9 appellants attack the constitutionality of the Georgia death penalty statute as not conforming to the requirements of Furman v. Georgia, 408 U. S. 238, supra, and allege that under the Furman decision the death penalty is cruel and unusual punishment violative of the Eighth Amendment to the United States Constitution.

Both of these points have been considered by this court in *Coley v. State,* 231 Ga. 829, supra. At page 832 we noted that the dissenting opinion written by Chief Justice Burger in Furman v. Georgia, supra, observed that only two members of the court, Mr. Justice Brennan and Mr. Justice Marshall, have concluded that the Eighth Amendment prohibits capital punishment for all crimes and under all circumstances.

In the *Coley* case this court upheld the constitutionality of the Georgia death penalty statute, Ga. L. 1973, pp. 159-172, and similar attacks on the constitutionality of the Act have been rejected by this court in subsequent cases. *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Ross v. State,* 233 Ga. 361, supra; *McCorquodale v. State,* 233 Ga. 369 (11), supra; *Hooks v. State,* 233 Ga. 149 (3) (210 SE2d 668) (1974); and *House v. State,* 232 Ga. 140 (205 SE2d 217) (1974).

Nothing said here persuades us that our holding on the constitutionality of the Georgia statute should be reconsidered.

10. Enumeration 11, made only by Tony Machetti, alleges it was reversible error to permit cross examination of him about a letter from him to his wife, and to admit a portion of the letter into evidence for the

limited purpose of impeaching his testimony, basing his objection on Mapp v. Ohio, 367 U. S. 643 (1960).

Mapp v. Ohio, supra, held that all evidence obtained by searches and seizures in violation of the Federal Constitution is inadmissible in a criminal trial in a state court.

Code Ann. § 38-1803 provides in part: "A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case."

Appellant denied, on cross examination, to ever having owned a shotgun. The first page of the letter admitted in evidence contained a statement that "Having, of course, nothing to do with the previous subject, am having my 12-gauge double-barrelled [sic] shot-gun restocked." Appellant alleges the letter was obtained by an illegal search and seizure after he and his wife were confined.

Without deciding whether the objection to the letter was valid in the absence of a written motion to suppress as provided in Code Ann. § 27-313 (b) and without evidence of the circumstances of how the state obtained the letter we believe that the letter was properly admitted for the limited purpose of impeachment only. Evidence obtained in violation of a constitutional norm has been held proper for impeachment purposes if there are assurances of the reliability of the evidence. In this case the letter was in the handwriting of the appellant and was written shortly before the alleged crime. In Harris v. New York, 401 U. S. 222 (1970) the United States Supreme Court said "The shield provided by Miranda [involving violation of a constitutional norm] cannot be perverted into a license to use perjury by way of a defense, from the risk of confrontation with prior inconsistent utterances." See also Walder v. United States, 347 U. S. 62 (1954); *Beckworth v. State,* 183 Ga. 871 (4) (190 SE 184) (1937).

This enumeration is without merit.

## II. Sentence Review

The death penalties imposed in these cases must conform to the standards set forth in Code Ann. § 27-2534.1 to authorize affirmance. This court must determine whether the sentences of death were imposed

under the influence of passion, prejudice, or any other arbitrary factor; whether the evidence supports the juries' findings of a statutory aggravating circumstance; and, whether the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendants, as required by Code Ann. § 27-2537 (c) (1-3).

We have reviewed the trial transcripts and records and have made a comparison of the evidence and sentences in similar cases pursuant to the mandate of the statute. The cases considered by the court in this review are listed in an appendix attached to this opinion. Using the standards prescribed for our review by the statute, we conclude that the sentences of death imposed in these cases were not imposed under the influence of passion, prejudice or any other arbitrary factor.

In recommending the death penalty as to both counts of the indictment the juries found as follows:

In the case of Anthony Isalldo Machetti that the offenses of murder were committed for the purpose of receiving for himself or another money or other thing of monetary value. Code Ann. § 27-2534.1 (b) (4).

In the case of Rebecca Machetti that the offenses of murder were committed for the purpose of receiving money or other things of monetary value. Code Ann. § 27-2534.1 (b) (4).

The evidence supports the juries' findings of statutory aggravating circumstances as to both of the counts of murder by both appellants. After considering both the crimes and the defendants and after comparing the evidence and sentences in these cases with those of previous murder cases reviewed, we are of the opinion that the sentences of death for the two offenses of murder are not excessive or disproportionate to the penalties imposed in similar cases.

The cases selected for comparison were those since January 1, 1970, involving a death sentence for murder and those involving life sentences during the same time period involving another simultaneous murder.

Examination of the cases reveals a clear pattern. In cases where a jury was authorized to impose a death penalty for multiple murders they have imposed the

death penalty on the sole offender where there was only one offender and on at least the principal offender when more than one offender was involved.

If the evidence is to be believed in these cases, the murders were planned executions of Ronald Akins and "whoever happened to be with him." Their sentences to death for murder are not excessive or disproportionate to the penalty imposed in similar cases.

*Judgment affirmed. All the Justices concur, except Gunter, J., who dissents, and Ingram, J., who dissents, from the sentence of death in Case No. 30268.*

ARGUED OCTOBER 15, 1975— DECIDED JANUARY 6, 1976 — REHEARING DENIED JANUARY 27, 1976.

*Byrd, Groover & Buford, Floyd M. Buford,* for appellant (case no. 30205).

*Van G. Hawkins,* for appellant (case no. 30268).

*Fred Hasty, District Attorney, W. Donald Thompson, Assistant District Attorney, Arthur K. Bolton, Attorney General, Lois F. Oakley, Assistant Attorney General,* for appellee.

## Appendix.

Similar cases considered by the court: *Henderson v. State,* 227 Ga. 68 (179 SE2d 76); *Pass v. State,* 227 Ga. 730 (182 SE2d 779); *Watson v. State,* 229 Ga. 787 (194 SE2d 407); *Callahan v. State,* 229 Ga. 737 (194 SE2d 431); *Sirmans v. State,* 229 Ga. 743 (194 SE2d 476); *Scott v. State,* 230 Ga. 413 (197 SE2d 338); *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805); *Bennett v. State,* 231 Ga. 458 (202 SE2d 99); *Howard v. State,* 231 Ga. 186 (200 SE2d 755); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441); *Morgan v. State,* 231 Ga. 280 (201 SE2d 468); *House v. State,* 232 Ga. 140 (205 SE2d 217); *Allen v. State,* 231 Ga. 17 (200 SE2d 106); *Smith v. State,* 230 Ga. 876 (199 SE2d 793); *Johnson v. State,* 231 Ga. 138 (200 SE2d 734); *Lingerfelt v. State,* 231 Ga. 354 (201 SE2d 445); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659): *Floyd v. State,* 233 Ga. 280 (210 SE2d 810).